**Michael SIMS, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

No. 20A03–0110–PC–328.

Court of Appeals of Indiana.

July 18, 2002.

Michael A. Dvorak, South Bend, IN, Attorney for Appellant.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Petitioner–Appellant Michael Sims ("Petitioner") appeals from the denial of his petition for post-conviction relief.

We affirm.

### ISSUES

Petitioner presents the following issues for our review:

I. Whether the trial court committed fundamental error when it ignored ruling precedent, admitted hearsay testimony, and failed to provide due process of law by violating Petitioner's Sixth Amendment right to confront any witness against him.

II. Whether Petitioner's fundamental due process rights were violated by the admission, at trial, of pretrial lineup identification that was unnecessarily suggestive and gave rise to a substantial likelihood of misidentification.

III. Whether petitioner was denied effective assistance of counsel at the trial and appellate levels when trial counsel failed to engage in discovery on behalf of the Petitioner and appellate counsel subsequently failed to thoroughly research this issue and other issues on appeal.

### FACTS AND PROCEDURAL HISTORY

On March 13, 1989, Petitioner was convicted of attempted murder, a Class A felony, rape while armed with a deadly weapon, a Class A felony, and criminal confinement, a Class B felony. The trial court sentenced Petitioner, on May 4, 1989, to a combined sentence of 120 years for these crimes.

Petitioner's conviction and sentence were affirmed by a panel of this court in an unpublished memorandum decision.

*Sims v. State,* No. 20A04–9212–CR–426, 618 N.E.2d 66 (Ind.Ct.App. August 5, 1993).

On December 6, 1999, Petitioner filed a pro se petition for post-conviction relief and an affidavit of indigency. The post-conviction court appointed the State Public Defender to represent Petitioner. Ultimately, Petitioner obtained private counsel and filed an amended petition for post-conviction relief. On June 27, 2001, the post-conviction court held a hearing on that petition. After considering further briefing by the parties,. the post-conviction court denied Petitioner's petition in an order dated September 5, 2001. This appeal ensued.[1]

## DISCUSSION AND DECISION
## STANDARD OF REVIEW

Post-conviction procedures do not afford the convicted an opportunity for a "super-appeal." *See Ben–Yisrayl v. State,* 729 N.E.2d 102, 105 (Ind.2000), *reh'g denied.* Post-conviction procedures create a narrow remedy for a subsequent collateral challenge to convictions that must be based on grounds enumerated in the post-conviction rules. *Williams v. State,* 724 N.E.2d 1070, 1076 (Ind.2000). Petitioners must establish their grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5).

A petitioner who has been denied post-conviction relief appeals from a negative judgment. *Prowell v. State,* 741 N.E.2d 704, 708 (Ind.2001). Therefore, the petitioner must convince the court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Ben–Yisrayl,* 729 N.E.2d at 106.

Since the post-conviction court entered findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6), we will reverse those findings and that judgment only upon a showing of clear error, or that which leaves us with a definite and firm conviction that a mistake has been made. *See Prowell,* 741 N.E.2d at 708; *Ben–Yisrayl,* 729 N.E.2d at 106.

## I. HEARSAY TESTIMONY

Petitioner claims that the trial court committed fundamental error, thereby depriving him of his Sixth Amendment right to confront witnesses testifying against him, by admitting hearsay testimony over his objection. Further, he claims that the post-conviction court erred by denying his petition for post-conviction relief in which he alleges this error. More specifically, Petitioner alleges that the post-conviction court erred by finding that he had failed to sustain his burden of proof by a preponderance of the evidence, and that this issue had been addressed before in the direct appeal of his conviction and sentence.

A post-conviction court must make findings of fact and conclusions of law on all issues presented in a petition. *See Allen v. State,* 749 N.E.2d 1158, 1164 (Ind.2001); Ind. Post–Conviction Rule 1(6). The findings must be supported by facts, and the conclusions must be supported by the law. *Allen,* 749 N.E.2d at 1164. Our review on appeal is limited to these find-

---

1. The State did not timely file a brief in this matter and has filed an Appellee's Motion to Reconsider Ruling on Belated Brief. We deny this motion. Therefore, the petitioner may prevail by making a prima facie case of error. *See Blunt–Keene v. State,* 708 N.E.2d 17, 19 (Ind.Ct.App.1999). However, this circumstance in no way relieves us of our obligation to decide the law as applied to the facts in the record in order to determine whether reversal is required. *Id.*

ings and conclusions. Furthermore, we apply a deferential standard of review when examining these findings and conclusions. *Id.*

■ The post-conviction court found and concluded that Petitioner was foreclosed from raising the hearsay testimony issue in his petition because that issue "was specifically ruled upon by the Indiana Court of Appeals in the memorandum opinion issued in this cause." Appellant's App. 352–53. The trial court is correct that issues available but not raised on direct appeal are waived, while issues litigated adversely to the defendant are res judicata. *Allen,* 749 N.E.2d at 1163.[2]

On direct appeal and in his petition, Petitioner argued that the trial court erred when it allowed the detective working on the case to testify on direct examination about why Petitioner's photograph was included in the photo array shown to the victim. Detective Schaffer testified as follows:

> I had developed information that Michael Sims was a very strong suspect in the rape and shooting of [the victim]. I had received a tip that Michael Sims was responsible for that.

Trial Tr. 532. A panel of this court found that this testimony qualified as the kind of out-of-court statements made to police officers that are offered to show why officers took certain action after speaking with an informant or to show the direction and focus of their investigation after receiving information, and thus, are not hearsay. *Sims v. State,* No. 20A04–9212–CR–426, slip op. at 18, 618 N.E.2d 66 (Ind.Ct.App. August 5, 1993).

However, after Petitioner's conviction and sentence, but prior to the decision in Petitioner's direct appeal, our supreme court decided *Williams v. State,* 544 N.E.2d 161 (Ind.1989). In *Williams,* the court held that the hearsay rule does not apply so as to require exclusion of police testimony containing out-of-court statements by third parties introduced primarily to explain why a particular course of action was taken during a criminal investigation. *Id.* at 162. Nonetheless, there must be a reasonable level of assurance that the testimony was not offered by the proponent nor received by the trier of fact as evidence of the truth of the third party's statement. *Id.* at 162–63. The supreme court reversed Williams' conviction because it found that the detective's testimony was sufficiently specific and detailed to provide the jury with a basis for making inferences that the informant had knowledge that Williams committed the offense and that Williams was therefore guilty as charged. *See id.* at 163. The testimony in the case at bar would seem to fall squarely within the holding of *Williams,* thereby making the decision reached on this issue in Petitioner's direct appeal to be at odds with *Williams.*

In *Williams v. State,* 737 N.E.2d 734 (Ind.2000), our supreme court granted Williams' petition to transfer from a court of appeals opinion affirming the post-conviction court's denial of his petition for post-conviction relief. Williams had appealed his conviction claiming that the trial court committed fundamental error by not correctly instructing the jury regarding the elements of attempted murder. His conviction was affirmed by a panel of this court. The supreme court denied transfer

---

**2.** Our supreme court has stated that in extraordinary circumstances the court will revisit prior decisions, in spite of the doctrine of res judicata, where the initial decision was clearly erroneous and would work a manifest injustice. *See State v. Huffman,* 643 N.E.2d 899, 901 (Ind.1994). However, the supreme court emphasized that courts should be loathe to exercise this power. *See id.*

in the matter, bringing his direct appeal to an end. Williams then filed a petition for post-conviction relief citing fundamental error in the attempted murder instruction. Williams noted two supreme court decisions finding fundamental error in identical instructions. The post-conviction court denied Williams' petition for post-conviction relief on the basis that this court's ruling on the issue in Williams' direct appeal made the issue foreclosed by res judicata. A panel of this court affirmed the post-conviction court's denial of Williams' petition for post-conviction relief.

On transfer, the supreme court held that the "issue has been argued and decided adverse[ly] to Williams (albeit wrongly) such that it is res judicata." *Id.* at 739. However, it was unlikely that Williams, who was convicted of attempted murder as an accomplice, could have received a fair trial. The jury was never instructed regarding the specific intent element of the crime charged. This fundamental error on the part of the Williams trial court required reversal of the decision by the post-conviction court to deny Williams' petition.

Even though we believe that this court's direct appeal opinion in the present case appears to be at odds with *Williams*, the issue remains foreclosed by res judicata. Petitioner did not suffer the same kind of harm as that suffered by Williams.

At Petitioner's trial, the victim testified and was cross-examined about the fact that she was able to look at the man who walked up the street and climbed into the backseat of her cab. The victim testified that she looked at him through the rear view mirror where she clearly saw his face. She testified that she was wearing her glasses when she saw him. She further testified that she observed her attacker when he forced her out of her cab at gunpoint. Her assailant stated that he couldn't allow her to live because he be-lieved that she had seen his face. Trial Tr. 368. The victim positively identified Petitioner in court as her attacker. Trial Tr. 373. The victim also testified that her attacker wore dark gray sweatpants, and that he placed her jewelry in one of his socks.

Dwight Brownlee, a jailhouse friend of Petitioner's, testified that Petitioner confessed the crime to him in jail. Brownlee indicated that Petitioner talked about wearing a gray jogging suit with no pockets. Brownlee also testified to conversations he had with Petitioner about escaping from jail, and that Petitioner wouldn't need to escape if he hadn't committed the crimes. Brownlee further testified that Petitioner asked him questions about giving blood and pubic hair samples.

Paul Misner, a forensic serologist for the Indiana State Police, testified about a saliva sample he had obtained from Petitioner, and blood and semen samples taken from the victim. He concluded that Petitioner could not be eliminated from a group of people who could have committed the crime.

Amy Hess, a victim's assistance officer, testified that she was with the victim during the line-up in this matter. Hess testified that the victim started shaking as the men entered the viewing area, and that the victim immediately identified Petitioner as her attacker. The victim told Hess that she knew that Petitioner was her attacker because she remembered his eyes. Hess testified that there was no hesitation in the victim's identification of Petitioner.

Detective Schaffer then testified about the photo array that he showed to the victim. Prior to making the statement at issue, Schaffer testified that the victim was able to identify who her attacker was. He then began to explain why Petitioner's photograph was included in the array. Af-

ter the testimony which drew the hearsay objection, Schaffer testified that the victim selected Petitioner's photograph from the array.

Before Detective Schaffer testified, the jury had heard from the victim and others about the victim's unequivocal identification of Petitioner from a line-up and in court. A serologist testified that Petitioner could not be eliminated from a group of people who could have attacked the victim. Further, Brownlee, a jailhouse friend of Petitioner's testified about his confession to him. Therefore, the questionable testimony contained in Detective Schaffer's testimony was cumulative at best of other evidence identifying Petitioner as the perpetrator of the crimes. Evidence that is cumulative is not reversible error. *See Reed v. State*, 748 N.E.2d 381, 395 (Ind. 2001).

Therefore, we conclude that the post-conviction court did not err by finding and concluding that the issue was foreclosed by res judicata.

## II. LINEUP IDENTIFICATION

█ Petitioner argues that the post-conviction court erred by denying his claim that the admission of pre-trial lineup identification constituted fundamental error because of the overly suggestive nature of the lineup. Petitioner alleged that the person standing next to him in the lineup pointed at him after they entered the viewing room. This evidence was not presented until the hearing on Petitioner's petition. Petitioner did not object to the pre-trial lineup identification evidence presented at trial, and did not raise the issue in his direct appeal.

█ While claims that were available, but not presented, on direct appeal are generally forfeited in post-conviction proceedings, forfeiture may not apply when the claimed error is fundamental.

*Conner v. State*, 711 N.E.2d 1238, 1246 (Ind.1999). If an issue was available on direct appeal, but not litigated, it is waived. *Haynes v. State*, 695 N.E.2d 148, 151 (Ind.Ct.App.1998), *trans denied.* However, there exists an exception to the waiver rule in circumstances where the post-conviction court committed "fundamental error." *Id.* at 152. This exception is viewed as an extremely narrow one, available only when the record reveals clearly blatant violations of basic and elementary principles of due process, and the harm or potential for harm cannot be denied. *Id.* The doctrine of fundamental error has been described as a failure to meet the requirements of due process of law; however, it is clear that fundamental error is not equated with constitutional error. *State v. Daniels*, 680 N.E.2d 829, 835 (Ind. 1997). To qualify as fundamental error, an error must be so prejudicial to the rights of the defendants to make a fair trial impossible. *Conner*, 711 N.E.2d at 1246. However, the fundamental error doctrine is not to be used as a safe harbor for defendants who fail to raise proper and timely objections at trial. *Haynes*, 695 N.E.2d at 152. Rather, the post-conviction fundamental error standard requires the defendant to persuade the court, by a preponderance of the evidence, that a violation of basic principles of law caused the defendant's conviction or sentence to be invalid. *Conner*, 711 N.E.2d at 1246.

Our supreme court has stated that while concerns over due process do sometimes merit invocation of a fundamental error exception to the contemporaneous objection rule on direct appeal, its availability as an exception to the waiver rule in post-conviction proceedings is generally limited to deprivation of the Sixth Amendment right to effective assistance of counsel, or an issue demonstrably unavailable to the petitioner at the time of his or her trial and direct appeal. *See Canaan v. State,*

683 N.E.2d 227, 235 n. 6 (Ind.1997); *Sanders v. State*, 765 N.E.2d 591, 591 (Ind. 2002).

Deputy Sheriff Webb testified during the hearing on the petition about the alleged pointing incident during the line-up. He had testified at trial and was cross-examined by the defense, but not about the alleged pointing incident. Since Petitioner was the person allegedly being pointed at during the lineup, that issue should have been available to him at trial and has been waived. Further, Petitioner did not raise this issue in his direct appeal when he raised his claims of ineffective assistance of trial counsel. Because he chose not to raise this claim of ineffective assistance of trial counsel on direct appeal when he raised the other claims, he is precluded from raising that issue now at the· post-conviction stage. *See Ben–Yisrayl v. State*, 738 N.E.2d 253, 259 (Ind. 2000).

The post-conviction court did not err by concluding that this issue was waived.

### III. EFFECTIVE ASSISTANCE OF COUNSEL

 Last, Petitioner argues that the post-conviction court erred by concluding that Petitioner was barred from raising his claims that his trial and appellate counsel were ineffective. More specifically, Petitioner alleges that trial counsel was ineffective for failing to engage in adequate discovery. He alleges that appellate counsel was ineffective for failing to raise the issue of trial counsel's alleged lack of discovery efforts, and the allegedly unduly suggestive lineup procedures.

 In order to prevail on a claim of ineffective assistance of counsel, Petitioner must show both deficient performance and resulting prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984); *Allen*, 749 N.E.2d at 1166. As for counsel's performance, we presume that counsel provided adequate representation. *Allen*, 749 N.E.2d at 1166. Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference. *Id.* As for the prejudicial effect of counsel's conduct, there must be a showing of a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 1166, 1167. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 1167.

 The standard for gauging appellate counsel's performance is the same as that for trial counsel. *Id.* at 1166. However, the analysis of claims of ineffective assistance of appellate counsel also has unique characteristics that were described in *Ben–Yisrayl*, 738 N.E.2d at 261.

Appellate counsel's performance, as to the selection and presentation of issues, will ... be presumed adequate unless found unquestionably unreasonable considering the information available in the trial record or otherwise known to appellate counsel. To prevail on a claim of ineffective assistance of appellate counsel, a defendant must therefore show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy.

Petitioner raised the issue of ineffective assistance of trial counsel in his direct appeal. *See Sims v. State*, No. 20A04–9212–CR–426, 618 N.E.2d 66 (Ind.Ct.App. August 5, 1993). The post-conviction court found that Petitioner was precluded from raising the issue of ineffective trial counsel again in his post-conviction relief petition. That issue was addressed in *Timberlake v.*

*State,* 753 N.E.2d 591 (Ind.2001), where the supreme court quoted from its opinion in *Ben–Yisrayl.*

> In *Woods* [*v. State,* 701 N.E.2d 1208 (Ind.1998) ], we held that a defendant may raise a claim of ineffective assistance of trial counsel for the first time in a post-conviction proceeding, but we emphasized that once the defendant chooses to raise his claim of ineffective assistance of trial counsel (either on direct appeal or post-conviction), he must raise all issues relating to that claim, whether record-based or otherwise. A defendant who chooses to raise on direct appeal a claim of ineffective assistance of trial counsel is foreclosed from relitigating that claim. ("[I]neffective assistance of trial counsel is not available in post-conviction if the direct appeal raises any claim of deprivation of Sixth Amendment right to counsel."). ("Some of the [defendant's arguments on post-conviction appeal] are new arguments about aspects of trial counsel's performance we considered on direct appeal; others focus on aspects not mentioned earlier. In either case, the earlier ruling that trial counsel was not ineffective is res judicata."); ("[The defendant], having once litigated his Sixth Amendment claim concerning ineffective assistance of counsel, is not entitled to litigate it again, by alleging different grounds."); ("Notwithstanding the fact that petitioner gave several additional examples of his counsel's alleged ineffectiveness during the post-conviction hearing, a consideration of the ineffectiveness issue would constitute review of an issue already decided on direct appeal.").

738 N.E.2d at 259. (Citations omitted).

We reach the same conclusion with regard to Petitioner's claims of ineffective assistance of trial counsel. The post-conviction court did not err by finding and concluding that Petitioner was precluded from raising issues of ineffective assistance of trial counsel in his post-conviction relief petition. Res judicata bars Petitioner from relitigating this issue in post-conviction proceedings.

■ Further, when the claim of ineffective assistance is directed at appellate counsel for failing fully and properly to raise and support a claim of ineffective assistance of trial counsel, a defendant faces a compound burden on post-conviction. *Timberlake,* 753 N.E.2d at 603. The post-conviction court must conclude that appellate counsel's performance was deficient and that, but for the deficiency of appellate counsel, trial counsel's performance would have been found deficient and prejudicial. *Id.* Petitioner's burden before the post-conviction court was to establish the two elements of ineffective assistance of counsel separately as to both trial and appellate counsel. *See id.*

Because Petitioner cannot show that his trial counsel was ineffective, his claims of ineffective assistance of appellate counsel based upon a failure to raise those alleged errors must also fail. *See Allen,* 749 N.E.2d 1158. The post-conviction court did not err by concluding that Petitioner failed to meet his burden of proof on this issue.

## CONCLUSION

The post-conviction court did not err by concluding that Petitioner's argument regarding the admission of hearsay was barred by res judicata. The post-conviction court correctly determined that Petitioner's argument concerning the allegedly suggestive nature of the pre-trial lineup was waived. Last, the post-conviction court did not err by concluding that Petitioner's argument concerning ineffective assistance of trial counsel was barred by res judicata, thus defeating argument con-

cerning ineffective assistance of appellate counsel based upon those errors.

Affirmed.

DARDEN, J., and BROOK, C.J., concur.