Jack JERVIS, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 46A04–0906–PC–338.

Court of Appeals of Indiana.

Nov. 30, 2009.

Rehearing Denied Jan. 28, 2010.

Susan K. Carpenter, Public Defender of Indiana, William D. Polansky, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Jack Jervis was convicted in 2001 of murder. We affirmed his conviction, and he petitioned for post-conviction relief, alleging he received ineffective assistance of trial counsel. The post-conviction court denied the petition, and we affirm.

## FACTS AND PROCEDURAL HISTORY

On the evening of March 24, 2000, Jervis and James Clouse drove to James Allison's apartment to collect $65 that Allison owed them. Clouse remained near the vehicle, and Jervis went to the apartment. Nicole Worthington, Jeremy Young, and Dayna Tidey were on a porch that was shared by three apartments. Jervis knocked on Allison's door and yelled for "Jimmy." (Tr. at 104.) Tidey told Jervis no one was home. Jervis told her "it's none of your concern[;] walk away." (*Id.*) Jervis then kicked the door open and went inside.

At that time, Dawn Jurkowski pulled up to the apartment building. She had been out cruising with Tyrie Crittendon, Shantell Fisher, Tim Arnett, and Scott Oyola. Crittendon lived in Allison's apartment. Worthington, Young, and Tidey went to Jurkowski's car and told Crittendon someone had entered his apartment. Crittendon and Arnett went to see what was happening.

As they were walking to the apartment, Clouse yelled at Crittendon and ran to him. Crittendon struck Clouse several times. Jervis exited the apartment and fired a shot. Crittendon ran away, and Jervis fired several more shots. Everyone fled the scene.

Jurkowski took several people to Young's house, and Young called the police. Jurkowski, Fisher, Arnett, and Oyola then began driving around looking for Crittendon. They found him lying on the ground. He had no pulse and was not breathing, and paramedics were unable to revive him. Crittendon had a single bullet wound to his chest. The bullet traveled downward, piercing Crittendon's left lung, heart, and liver. The bullet was recovered from his body.

Jervis voluntarily turned his RG Industries Model 14 revolver over to the police.

Dennis Trigg, a firearms examiner with the Indiana State Police, determined the bullet recovered from Crittendon's body had been fired from Jervis's gun. Trigg also examined Crittendon's shirt and jacket, and he determined from the pattern of gunpowder and lead on the clothing that the gun had been in contact with Crittendon's jacket when it was fired. Dr. Joseph Prahlow, the pathologist who performed the autopsy, did not examine the clothing, but determined from the soot on Crittendon's body that he had been shot from no more than a foot away.

Jervis was charged with murder. At trial, Fisher, Worthington, Young, Arnett, Jurkowski, and Tidey testified that Crittendon went to investigate the break-in at his apartment, got into an altercation with Clouse, and then was shot by Jervis. Jurkowski testified she saw Crittendon hit Clouse with the butt of a gun, but the others claimed Crittendon had nothing in his hands when he was fighting Clouse. Police found a cocked and loaded Derringer with a silver barrel lying next to Crittendon's body.

Clouse testified he was drunk that evening and did not recall all the details, but he confirmed that he went with Jervis to Allison's apartment to collect a debt. Clouse claimed to see someone come around the corner and the flash from a gun fired in his direction. Afterwards, when he discussed the incident with Jervis, Jervis said "he had emptied his weapon, and nobody would know because too many people were standing around, who did it, who shot who." (*Id.* at 221.)

Jervis made a statement to police, in which he claimed three black males came around the corner and started shooting at Clouse. He denied having a gun with him and denied acting in self-defense. At trial, Jervis admitted he went to Allison's apartment, kicked in the door, and went inside.

He also admitted he shot Crittendon, but claimed he was acting in self-defense and in defense of Clouse. He claimed he saw Crittendon hitting Clouse "with a piece of silver," (*id.* at 338), and he went to help him up. When he had helped Clouse to his feet, he saw a barrel pointed at his head and heard a "[s]nap." (*Id.* at 343.) Jervis said he pulled out his gun and tried to shoot Crittendon in the arm or shoulder. He said he shot Crittendon from about a foot away. As Crittendon ran away, Jervis continued to fire shots in the air to scare everybody away.

The jury was instructed on murder and self-defense. During deliberations, the jury sent a note to the judge, which read, "Judge Gilmore, it bothers some of us that our only two options are guilty of murder or acquittal and why we may not have another option of let's say reckless homicide." (*Id.* at 434.) The trial court proposed the following response: "Ladies and gentlemen, you must use the instructions and the possible verdict forms given to you by the Court, thank you." (*Id.*) Neither party objected. After several more hours of deliberation, the jury found Jervis guilty of murder.

Jervis appealed, arguing the State presented insufficient evidence to rebut his claim of self-defense. We affirmed. *Jervis v. State*, 766 N.E.2d 1285 (Ind.Ct.App., 2002).

On December 2, 2003, Jervis filed a *pro se* petition for post-conviction relief. On May 30, 2006, the State Public Defender entered an appearance, and on April 19, 2007, an amended petition for post-conviction relief was filed. The amended petition alleged trial counsel was ineffective because he did not object to a portion of the self-defense instruction read to the jury and because he did not tender an instruction on reckless homicide after the jury inquired about that offense.

A hearing was held on July 19, 2007. Trial counsel testified he was unaware of the case law on which Jervis was relying for his argument that the self-defense instruction was inadequate. He further testified he did not consider tendering a reckless homicide instruction because in his thirty years of trying and observing cases, he had never seen a jury given a new instruction after deliberations had begun. He stated he would have asked for a reckless homicide instruction if he thought it would be allowed:

> Absolutely, the penalties were so dramatically different, I would do anything that would be in ·the best interest of Jack.... And if I thought that I could say, Judge Gilmore go back and instruct them on reckless homicide, because at least to me it was clear that's what they wanted to do, I would have done it in a minute.

(PCR Tr. at 13.) Jervis also testified he would have wanted the instruction to be given to the jury.

The matter was eventually reassigned to Judge Kathleen Lang. On April 21, 2009, the court issued an order denying Jervis' petition for post-conviction relief.

## DISCUSSION AND DECISION

■ The petitioner bears the burden of establishing the grounds for post-conviction relief by a preponderance of the evidence. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind.2001), *reh'g denied, cert. denied* 537 U.S. 839, 123 S.Ct. 162, 154 L.Ed.2d 61 (2002). Jervis is appealing from a negative judgment, and to the extent his appeal turns on factual issues, he must convince us "that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the postconviction court." *Id.* We will reverse "only if the evidence is without conflict and leads only to a conclusion contrary to the result of the postconviction court." *Id.*

■ To prevail on a claim of ineffective assistance of counsel, the petitioner must show both that counsel's performance fell below an objective standard of reasonableness and that the deficient performance so prejudiced the petitioner that he was denied a fair trial. *Coleman v. State*, 694 N.E.2d 269, 272 (Ind.1998) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied*). There is a strong presumption that counsel rendered adequate assistance. *Id.* "Evidence of isolated poor strategy, inexperience or bad tactics will not support a claim of ineffective assistance." *Id.* at 273. "Counsel's performance is evaluated as a whole." *Lemond v. State*, 878 N.E.2d 384, 391 (Ind.Ct.App.2007), *trans. denied*. To establish the prejudice prong of the test, Jervis must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Sims v. State*, 771 N.E.2d 734, 741 (Ind.Ct.App. 2002), *trans. denied*. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "Prejudice exists when the conviction or sentence resulted from a breakdown in the adversarial process that rendered the result of the proceeding fundamentally unfair or unreliable." *Coleman*, 694 N.E.2d at 272.

### 1. *Reckless Homicide*

■ Jervis argues the trial court could have instructed the jury on reckless homicide after the jury sent out its note, and counsel's performance was deficient because he did not tender a reckless homicide instruction at that point.[1] We dis-

---

1. Jervis does not challenge counsel's initial decision to allow the case to go to the jury

agree that the trial court had discretion to instruct the jury on reckless homicide for the first time after deliberations had begun.

 Our Indiana Supreme Court addressed the proper response to a jury's question during deliberations in *Crowdus v. State,* 431 N.E.2d 796 (Ind.1982). *Crowdus* held that once deliberations begin, the trial court generally should not give additional instructions; instead the court should direct the jury to reread the instructions given. *Id.* at 798. The trial court should modify its instructions only when there is an error or a legal gap in the instructions. *Id.*

In addition, the legislature had provided:

If, after the jury retires for deliberation:

(1) there is a disagreement among the jurors as to any part of the testimony; or

(2) the jury desires to be informed as to any point of law arising in the case;

the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

Ind.Code § 34–36–1–6. Cases interpreting the statute have frequently cited the *Crowdus* rule that trial courts generally should only reread the instructions unless there is a legal gap or error in the instructions.[2] *See, e.g., Powell v. State,* 769 N.E.2d 1128, 1133 (Ind.2002), *reh'g denied.* The statute "does not mandate that the trial court provide information automatically and mechanically every time the jury requests it." *Hobson v. State,* 795 N.E.2d 1118, 1125 (Ind.Ct.App.2003), *trans. denied; see also Powell,* 769 N.E.2d at 1133 (holding the trial court complied with the mandate of Ind.Code § 34–36–1–6 by directing the jury to reread the instructions).

Prior decisions do not define precisely what constitutes a "point of law arising in the case." However, it appears the legal information must be necessary for the jury to resolve the issues, or at a minimum, relate to issues that were presented to the jury. *Compare Foster v. State,* 698 N.E.2d 1166, 1171 (Ind.1998) (jury's question about whether prosecutor had discretion in charging Foster was not a point of law arising in the case), *with Ronco v. State,* 862 N.E.2d 257, 259 (Ind.2007) (clarification was warranted when Ronco was charged with resisting law enforcement by fleeing and by forcibly resisting, and jury expressed confusion over whether State had to prove both).

Jervis' case was submitted to the jury solely as a murder case. A reckless homicide instruction would not help the jury determine whether Jervis committed murder. Instead, it would insert a new issue into the case after the close of evidence and arguments. Because the only issue before the jury was whether Jervis committed murder, the jury's question about reckless homicide did not concern a point of law arising in the case, and it would have been inappropriate for the trial court to instruct the jury on reckless homicide for the first time during deliberations. Therefore, counsel's failure to request the instruction was not deficient performance.

without instructions on lesser-included offenses.

**2.** At the time *Crowdus* was decided, this statutory language was codified at Ind.Code § 34–1–21–6. However, the statute was not mentioned in *Crowdus.* Jervis argues he need show only *prima facie* error because the State did not respond to his argument based on Ind.Code § 34–36–1–6. However, the State discusses *Crowdus* and its progeny, which this Court and our Supreme Court have treated as part of the analysis of the proper response pursuant to the statute.

## 2. Self-defense Instruction

■ The relevant portion of the self-defense instruction given to the jury was:

A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that the force is necessary to prevent serious bodily injury to himself or a third person or the commission of a felony. No person in this State shall be placed in legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary.

\* \* \* \* \* \*

*Notwithstanding [the foregoing], a person is not justified in using force if:*

*He is committing, or is escaping after the commission, of a crime;*

He provokes unlawful action by another person with intent to cause bodily injury to the other person; or

He has entered into combat with another person or is the initial aggressor, unless he withdraws from the encounter and communicates to the other person his intent to do so and the other person nevertheless continues or threatens to continue unlawful action.

The State has the burden of disproving this defense beyond a reasonable doubt.

(Appellant's App. at 111–13) (emphasis added). This instruction essentially mirrored the version of the self-defense statute in effect at the time of Jervis' trial. *See* Ind.Code § 35–41–3–2 (2001).

At trial, the prosecutor argued Jervis' self-defense claim was barred because he was committing or escaping after the commission of residential entry. Jervis argues counsel should have objected to the itali-cized portion of the instruction because it did not inform the jury that the defense was not barred by his commission of residential entry unless the crime was causally related to his confrontation with Crittendon.

Jervis' argument is based on *Harvey v. State*, 652 N.E.2d 876 (Ind.Ct.App.1995), *trans. denied.* Harvey was tried for murder, and the State argued self-defense was not available to Harvey because he was carrying a handgun without a license at the time of the shooting. The trial court instructed the jury: "A person who is not in his home or fixed place of business and is carrying a handgun without a license cannot by law claim the protection of the law of self defense." *Id.* at 876. We held the instruction was erroneous:

If [the commission of a crime exception] is to be taken literally, then no person may claim self defense if that person at the time he acts is coincidentally committing some criminal offense. For example, possession of a marijuana cigarette or the failure to have filed one's income tax returns could deny one the defense no matter how egregious, or unrelated, the circumstances that prompted the action. Read as a whole, the statute refutes such a construction. Its intent is to preclude the defense where it is sought by one who was actively engaged in the perpetration of a crime, and that criminal activity produced the confrontation wherein the force was employed. Our supreme court has, at least inferentially, supported this construction in *Jones v. State* (1986) Ind., 491 N.E.2d 999. There the court held that whether the defendant was justified in firing a sawed-off shotgun in self defense was properly a question for the jury, [even

though possession of such a weapon is a felony pursuant to IC 35–47–5–4.1].

*Id.*[3]

Jervis argues the offense of residential entry was complete at the time of the shooting and there was a factual dispute as to whether he was fleeing. We disagree. Jervis admitted he went to Crittendon's apartment to collect money that Allison owed to him and Clouse. He admitted he broke into the apartment while Clouse kept watch outside. It is undisputed that Crittendon arrived home while Jervis was inside the apartment, and Crittendon was intercepted by Clouse when he went to investigate the break-in. Crittendon and Clouse began fighting, and Jervis admitted he broke up the fight by shooting Crittendon. Thus, even under Jervis' account of the facts, there is an unbroken causal chain between the break-in and the shooting, which precludes his reliance on self-defense. Therefore, Jervis was not prejudiced by counsel's failure to object to the self-defense instruction.

The judgment of the post-conviction court is affirmed.

Affirmed.

CRONE, J., and BROWN, J., concur.

---

3. Our Indiana Supreme Court clarified this rule in *Mayes v. State*, 744 N.E.2d 390 (Ind. 2001), a decision handed down a few days after Jervis was convicted:

> We conclude that because a defendant is committing a crime at the time he is allegedly defending himself is not sufficient standing alone to deprive the defendant of the defense of self-defense. Rather, there must be an immediate causal connection between the crime and the confrontation. Stated differently, the evidence must show that but for the defendant committing a crime, the confrontation resulting in injury to the victim would not have occurred. *Id.* at 394.