**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JOHNNY W. ULMER**
Cataldo Law Offices, Inc.
Bristol, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES GERALD, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 20A05-1108-CR-413 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry Shewmaker, Judge
Cause No. 20C01-0912-FB-00081

**May 21, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

James Gerald ("Gerald") was convicted in Elkhart Circuit Court of Class B felony robbery and adjudicated an habitual offender. The trial court ordered Gerald to serve a ten-year sentence for robbery and enhanced that sentence by eight years due to the habitual offender adjudication. Gerald appeals his conviction and raises the following issue: whether he was denied the effective assistance of trial counsel.

We affirm.

**Facts and Procedural History**

On August 25, 2009, at approximately 11:45 p.m., Bryan Dull ("Dull") was walking to Kathy's Bar in Elkhart, Indiana. As he neared the intersection of Bower and Riverside, a car pulled up alongside him. Two males exited the vehicle and started walking in Dull's direction. Dull began to feel uncomfortable and started running toward the bar. However, he tripped and fell while running, allowing the two men to catch him. They held Dull down and punched him in the head while demanding money. But Dull did not have any money, so eventually the men got back into the vehicle and drove away.

After the attack, Dull discovered that his Blackberry cell phone was missing. He was unable to call anyone for assistance and walked to his grandparents' home several blocks away. Elkhart Police Officer Chris Faigh was dispatched to Dull's grandparents' home after his father reported the incident. Officer Faigh observed Dull's injuries, and requested an evidence technician to photograph them. Dull refused medical treatment for his injuries because he did not have medical insurance.

After concluding the interview with Dull, Officer Faigh received a dispatch concerning a fight near the area where Dull was attacked. When he and another

2

responding officer, Corporal Anthony Rucker, arrived on the scene, they observed suspects fleeing the area. Officer Faigh saw one of the suspects, who was later identified as Gerald, running and ordered him to stop multiple times. Gerald refused and the officer had to chase him down. Officer Faigh arrested Gerald for resisting law enforcement and public intoxication. Corporal Rucker arrested another fleeing suspect, Allen Hartung-Mann ("Mann") for illegal consumption by a minor.

During the booking procedure at the police station, Corporal Rucker found two cell phones in Mann's possession. Officer Faigh observed that one of the phones was a Blackberry. When he turned the cell phone on, he saw a picture of Dull. Dull was then asked to come to the police station to identify his property. Dull produced the original packing for the phone, and Officer Faigh confirmed that the serial numbers on the packing and phone matched.

Dull was then shown a photo array and identified Mann as one of his assailants. The investigation was then turned over to Detective Robert Presswood. The detective had spoken with Mann who stated that Gerald and another man named T.J. attacked Dull. Dull was then shown another photo array and identified Gerald as one of the men who attacked him.

Gerald was charged with Class B felony robbery and with being a habitual offender. He was also charged with resisting law enforcement and public intoxication under a separate cause number. The two separate causes were joined for trial. The proceedings were delayed in part because Gerald desired to represent himself, but after he sought reappointment of counsel, a jury trial was held on June 20, 2011.

The jury found Gerald guilty on all four charges, and also found that he was a habitual offender. Gerald was sentenced on July 14, 2011, and he was ordered to serve an advisory ten-year sentence for the robbery conviction. The trial court then enhanced that sentence by eight years for the habitual offender adjudication. The sentences imposed for resisting law enforcement and public intoxication were ordered to be served concurrent to the sentence imposed for the robbery conviction. Gerald now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

Gerald has raised his ineffective assistance of counsel claim on direct appeal of his conviction. A post-conviction proceeding is generally the preferred forum for adjudicating claims of ineffective assistance of counsel because the presentation of such claims often requires the development of new evidence not present in the trial record. See Woods v. State, 701 N.E.2d 1208, 1219 (Ind. 1998). If a defendant chooses to raise a claim of ineffective assistance of counsel on direct appeal, "the issue will be foreclosed from collateral review." Id. at 1220. This rule should "likely deter all but the most confident appellants from asserting any claim of ineffectiveness on direct appeal." Id. When a claim of ineffective assistance of counsel is based solely on the trial record, as it is on direct appeal, "every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight[,]" and "[i]t is no surprise that such claims almost always fail." Id. at 1216 (internal quotes and citation omitted).

To prevail on a claim of ineffective assistance of counsel, Gerald must show both that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced him. Coleman v. State, 694 N.E.2d 269, 272 (Ind. 1998) (citing Strickland v. Washington, 466 U.S. 668 (1984)). There is a strong presumption that counsel rendered adequate assistance. Id. "Evidence of isolated poor strategy, inexperience or bad tactics will not support a claim of ineffective assistance." Id. at 273.

To establish the prejudice prong of the test, Gerald must also show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Sims v. State, 771 N.E.2d 734, 741 (Ind. Ct. App. 2002), trans. denied. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "Prejudice exists when the conviction or sentence resulted from a breakdown in the adversarial process that rendered the result of the proceeding fundamentally unfair or unreliable." Coleman, 694 N.E.2d at 272.

Gerald claims his trial counsel was ineffective 1) for failing to investigate the circumstances of the photo array wherein Dull identified Gerald as one of his attackers, 2) for failing to call as a witness the police officer who presented the first two photo arrays to Dull, and 3) for failing to cross-examine Detective Presswood on his presentation of the third photo array to Dull.

First, we observe that because Gerald has presented this issue on direct appeal, there is no evidence in the record concerning what investigation counsel undertook concerning Dull's identification of Gerald when presented with the photo arrays during

5

the police investigation. Gerald's claim concerning counsel's failure to investigate is not supported by any evidence.

State's Exhibits 11 and 12 are two of the three photo arrays that Dull was presented with for the purpose of identifying his assailants. Gerald's picture, which Dull circled, only appears in State's Exhibit 12. The probable cause affidavit references another photo array that Sergeant Karl Miller presented to Dull and states that Dull "was unable to identify the other person involved in the robbery." Appellant's App. p. 41. But there is no evidence in the record that would establish whether Gerald's picture was included in that photo array.

There is also no evidence in the record that would establish that Gerald was prejudiced by trial counsel's failure to call Sergeant Miller as a witness. Quite simply, it is possible that Gerald's picture was not included in that photo array. Furthermore, at trial, Dull identified Gerald as one of the men who attacked him.

Gerald also argues that trial counsel was ineffective for failing to cross-examine Detective Presswood regarding Dull's identification of Gerald in the third photo array. He claims that Dull's "selection of Mr. Gerald, would suggest that the identification procedures used by Detective Presswood during this lineup was impermissibly suggestive." Appellant's Br. at 17. This broad assertion lacks evidentiary support in the record. Moreover, we note that trial counsel elicited testimony from Dull attempting to challenge Dull's ability to know and to recall what his attackers looked like.

Finally, Gerald argues that his trial counsel was ineffective for failing to impeach Mann's testimony. Gerald alleges that "trial counsel could have impeached [Mann's]

6

testimony if he had interviewed [T.J.] before the trial, or call him as a witness at trial. Mr. Gerald alleged that [T.J.] would have substantiated his statement that he stayed in the vehicle and he was the driver." Appellant's Br. at 19. Furthermore, Gerald claims that he told trial counsel to contact the owner of the vehicle and T.J., but counsel did not do so.

Gerald's argument is based on speculation, not on the record. First, there is no evidence in the record from which we could conclude whether trial counsel attempted to contact T.J. or the vehicle's owner. And there are any number of strategic reasons why counsel would not have subpoenaed T.J. to be a witness at trial. There is simply no evidence of what his testimony might have been, and it is quite possible that he would have testified that Gerald participated in the robbery. Finally, during closing arguments, trial counsel argued that Mann's credibility was questionable and that he was trying to protect his friend, T.J., by testifying that Gerald attacked Dull.

Because the record lacks any evidentiary support for Gerald's arguments, Gerald cannot rebut the presumption that trial counsel rendered adequate assistance. Gerald has not established that he was subjected to ineffective assistance of trial counsel. We therefore affirm his conviction for Class B felony robbery.[1]

Affirmed.

ROBB, C.J., and BAILEY, J., concur.

---

[1] Gerald has not raised any arguments specifically challenging the habitual offender adjudication or the resisting law enforcement and public intoxication convictions.