Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**STEVEN H. SCHUTTE**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HOBERT PITTMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 31A01-1204-PC-158 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HARRISON SUPERIOR COURT
The Honorable Roger D. Davis, Judge
Cause No. 31D01-0812-PC-11

**January 30, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Hobert Pittman ("Pittman") was convicted in Harrison Superior Court of two counts of felony murder, Class A felony attempted murder, Class B felony conspiracy to commit burglary, Class B felony burglary, Class D felony theft, and Class D felony auto theft and is imprisoned for life without parole for one of the two felony murders. Pittman filed a petition for post-conviction relief, which the post-conviction court denied. Pittman appeals the denial and raises two issues, which we restate as:

I. Whether appellate counsel was ineffective for failing to argue on direct appeal that Pittman was entitled to reversal of his convictions and a new trial due to a Doyle violation; and

II. Whether Pittman is entitled to post-conviction relief due to newly discovered evidence of a real estate transaction that occurred between a victim and a State's witness shortly after Pittman's trial concluded.

We affirm.

**Facts and Procedural History**

Facts pertinent to this appeal were recited in our supreme court's resolution of Pittman's direct appeal of his convictions and sentence.

The defendant, Albert Pittman, is the son of Hobert Pittman and the stepson of Linda Pittman. In the spring of 2004, Hobert and Linda lived together in the Ohio River town of Mauckport, Indiana, along with Linda's mother, Myrtle Satterfield. Myrtle was in her eighties and suffered from a medical condition that had required amputation of both legs. To transport Myrtle, Hobert and Linda had purchased a wheelchair-accessible van. They also owned two pick-up trucks and a Ford Explorer.

Although Myrtle owned a house in adjacent Crawford County, she was unable to live alone, and Hobert and Linda were helping to prepare the house to be rented. On Saturday, June 12, 2004—Hobert and Linda's thirteenth wedding anniversary—Hobert, Linda, and Myrtle all worked at the Crawford County property. At some point, Hobert left for home in his truck, but Linda and Myrtle remained for a few hours and returned to Mauckport late in the afternoon in the van.

2

When Linda and Myrtle arrived at the home, they found the security gate open and Hobert's truck parked at an unusual angle. As the van stopped in the driveway, Pittman emerged from the garage on the driver's side of the van and fired shots into the van. Pittman then got into Linda's Explorer, drove past the van, and stopped. Pittman and another man emerged from the Explorer and both resumed shooting into the van. Linda screamed, then stopped breathing and tried to appear dead in the driver's seat. Pittman and the man then drove away in the Explorer.

Despite having sustained severe injuries, Linda drove for help with Myrtle still in her wheelchair in the van. Linda identified the Explorer ahead of her turning left toward the Ohio River. She saw the Explorer's backup lights come on, thought the Explorer was coming after her, and turned right into the parking lot of a tavern where she was able to flag down a passing truck. Linda told Darrell Mosier and Matthew Stanley that Pittman had shot her and her family and had driven away in an Explorer. At that point, Mosier and Stanley saw an Explorer approach, execute a U-turn, and head back toward the Ohio River. Stanley remained with Linda and called 911 while Mosier followed the Explorer in his truck. From a height above the river, Mosier saw the Explorer stop under a bridge where two men transferred items from the Explorer to a Plymouth Horizon that had been parked under the bridge, and then drove the Horizon over the bridge into Kentucky.

Myrtle was found dead in the van. An autopsy concluded that she had died of shotgun blasts to her head and shoulder. Linda sustained shotgun wounds to her chest and lost a thumb, but survived. Examination of the van revealed bullet fragments and shotgun pellets and wadding. The front windshield and rear driver's side window had bullet holes, and the windows on the driver's side had holes consistent with shotgun fire.

At the home, officers found Hobert under a tarp in the garage, dead from a wound to the head that could have been inflicted by either a shotgun or a rifle. Empty shotgun and rifle shells were found in the driveway. Portions of the home had been ransacked, a window was broken, and Hobert's gun cabinet had been emptied. A search of the Ford Explorer abandoned at the bridge turned up seventeen long guns, at least four of which were Hobert's. Tests determined that the bullet fragments and shotgun shells recovered at the crime scene had been fired from two of the weapons recovered from the Explorer. No useful fingerprints were found on either weapon.

Two days after the shootings, Pittman's mother reported to law enforcement that she had received a phone call from Pittman. Pittman told

3

his mother that he was not involved in the shootings and was sleeping in a park when they occurred, but had heard of the murders on his scanner radio. Law enforcement determined that the call came from a pay phone in Daytona Beach, Florida. Daytona Beach police soon located and arrested Pittman and John Michael Naylor and seized a Plymouth Horizon. The men were transported back to Indiana along with evidence found in the Horizon, including firearms and survival gear. No scanner was found among the items removed from the vehicle. While incarcerated in Indiana, Naylor requested to speak with a correctional officer and stated, "I'm guilty of killing those two people and need to talk to someone over the situation."

Pittman was charged with theft, auto theft, conspiracy to commit burglary, attempted murder of Linda, and two counts of felony murder alleging that Hobert and Myrtle were killed in the course of a burglary. The State also filed a request for life imprisonment without parole, alleging three aggravating circumstances as to each murder: that Pittman had intentionally killed each victim in the course of the burglary, that he did so by lying in wait, and that the murders occurred while Pittman was on probation. The jury found Pittman guilty on all counts, determined the existence of statutory aggravators, decided that the aggravators outweighed any mitigating circumstances, and recommended two sentences of life imprisonment without parole. The trial court sentenced Pittman to concurrent terms of twenty years for the conspiracy to commit burglary and three years for theft, followed by consecutive sentences of life without parole for each of the two murders, fifty years for attempted murder, and three years for auto theft.

Pittman v. State, 885 N.E.2d 1246, 1250-52 (Ind. 2008) (footnote omitted).

Pittman's appellate counsel raised the following issues on direct appeal: 1) whether the trial court properly denied Pittman's motion for mistrial after the jury heard testimony that Pittman and Naylor, his co-conspirator, met in prison; 2) Whether the trial court abused its discretion when it admitted a photograph of the victims into evidence; 3) whether a sentencing order imposing life without parole under the amended life without parole statute must comply with heightened requirements established by prior case law; 4) whether the trial court erred when it imposed a sentence of life without parole on a

4

theory of accomplice liability; and, 5) whether the trial court improperly imposed consecutive sentences. Our supreme court concluded that there was no evidence from which a reasonable fact finder could conclude whether Pittman or Naylor fired the shot that killed Hobert, and therefore, Pittman's sentence of life without parole could not be sustained on that felony murder conviction. Id. at 1259. The court remanded the case to the trial court to impose a sixty-five-year sentence for Hobert's murder, to be served consecutively to the sentences imposed on Pittman's other convictions. Id. at 1260. Pittman's sentence of life imprisonment without parole for Myrtle's murder was affirmed. The supreme court found no error on the remaining issues raised.

Pittman filed a pro se petition for post-conviction relief in 2008, and an amended petition was filed by counsel on March 25, 2011. The post-conviction court held an evidentiary hearing on the petition on September 30, 2011. On March 15, 2012, the post-conviction court entered extensive findings of fact and conclusions of law and denied Pittman's petition for post-conviction relief.

In its findings, the post-conviction court recounted the questioning and testimony of each witness that could possibly support Pittman's claim that his appellate counsel was ineffective for failing to raise the alleged Doyle violation on direct appeal. The court then concluded that Pittman was not subjected to ineffective assistance of appellate counsel because the claim would not have been successful on direct appeal, the claim was not stronger than the other claims raised, and even if a Doyle violation did occur, Pittman could not prove prejudice given the overwhelming evidence of his guilt.

5

The court also concluded that Pittman was not entitled to relief based on his claim of newly discovered evidence. Specifically, the court found that the State's testifying witness, Darrell Mosier, who assisted Linda after she had been shot, purchased her residence. Mosier's initial inquiry about the real estate transaction occurred during Pittman's trial, but no further discussion of the future transaction occurred until after the trial concluded. Mosier and Linda did enter into a purchase agreement after Pittman's trial. The court concluded that the newly discovered evidence had little impeachment value to Pittman because Mosier's trial testimony was nearly identical to Stanley's, who also assisted Linda after the shooting. Given the consistency between their testimony and the other overwhelming evidence presented concerning Pittman's guilt, the post-conviction court concluded that there is "no probability of a different result upon a new trial." Appellant's App. p. 100. Pittman now appeals.

**Standard of Review**

Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. McCary v. State, 761 N.E.2d 389, 391 (Ind. 2002). Rather, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. Davidson v. State, 763 N.E.2d 441, 443 (Ind. 2002). A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Henley v. State, 881 N.E.2d 639, 643 (Ind. 2008). On appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. To prevail on appeal from the denial of post-conviction relief, the

6

petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id. at 643–44.

Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we do not defer to the court's legal conclusions, but "the findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." Id. at 644.

### I. Ineffective Assistance of Appellate Counsel

To prevail on a claim of ineffective assistance of counsel, Pittman must show both that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced him. Coleman v. State, 694 N.E.2d 269, 272 (Ind. 1998) (citing Strickland v. Washington, 466 U.S. 668 (1984)). There is a strong presumption that counsel rendered adequate assistance. Id. "Evidence of isolated poor strategy, inexperience or bad tactics will not support a claim of ineffective assistance." Id. at 273.

To establish the prejudice prong of the test, the petitioner must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Sims v. State, 771 N.E.2d 734, 741 (Ind. Ct. App. 2002), trans. denied. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "Prejudice exists when the conviction or sentence resulted from a breakdown in the adversarial process that rendered the result of the proceeding fundamentally unfair or unreliable." Coleman, 694 N.E.2d at 272. This

7

standard applies to both claims of ineffective assistance of trial and appellate counsel. Rhoiney v. State, 940 N.E.2d 841, 845 (Ind. Ct. App. 2010), trans. denied.

Pittman argues that his appellate counsel was ineffective for failing to argue a Doyle violation, and he was therefore entitled to reversal of his convictions and a new trial. Our supreme court has recognized three types of ineffective assistance of appellate counsel: (1) denial of access to appeal; (2) failure to raise issues that should have been raised; and (3) failure to present issues well. Wrinkles v. State, 749 N.E.2d 1179, 1203 (Ind. 2001).

> When a petitioner claims the denial of effective assistance of appellate counsel because counsel did not raise issues the petitioner argues should have been raised, reviewing courts should be particularly deferential to counsel's strategic decision to exclude certain issues in favor of others, unless such a decision was unquestionably unreasonable. But this does not end our analysis. Even if we determine that counsel's choice of issues was not reasonable, a petitioner must demonstrate a reasonable probability that the outcome of the direct appeal would have been different in order to prevail.

Taylor v. State, 840 N.E.2d 324, 338 (Ind. 2006) (citations and quotation marks omitted). We must determine "(1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are clearly stronger than the raised issues." Gray v. State, 841 N.E.2d 1210, 1214 (Ind. Ct. App. 2006) (citation omitted), trans. denied.

At the post-conviction hearing, appellate counsel testified that he did not raise the alleged Doyle violation[1] on direct appeal because he failed to recognize and consider the issue. Appellate counsel observed that he would have been required to raise the issue as fundamental error because trial counsel failed to object to the testimony, and he could not say for certain whether he would have raised the issue.

Pittman claims that certain questioning of several witnesses would have supported a Doyle violation claim. The prosecuting attorney asked law enforcement officials who investigated the case whether certain individuals, such as Stanley, Mosier, Linda, and Pittman's mother, were cooperative in their interviews with the police. The investigating officers testified that the individuals were cooperative. Two detectives who went to Florida, where Pittman and Naylor were arrested, also testified that they did not try to question Pittman because he had stated that he wanted an attorney present during questioning.

We need not address whether the testimony concerning Pittman's right to remain silent resulted in a Doyle violation because Pittman cannot demonstrate a reasonable probability that the outcome of the direct appeal would have been different given the

---

[1] In Kubsch v. State, 784 N.E.2d 905 (Ind. 2003), our supreme court discussed our United States Supreme Court's decision in Doyle v. Ohio, 426 U.S. 610 (1976) and stated:

> In Doyle, the Supreme Court held, "[T]he use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment." The Court explained, "[W]hile it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings." "Silence" does not mean only muteness; it includes the statement of a desire to remain silent as well as a desire to remain silent until an attorney has been consulted. Further, Doyle is not limited solely to "the use for impeachment purposes" of a defendant's silence. Rather, it also applies to the use of a defendant's silence as affirmative proof in the State's case in chief.

Id. at 913-14 (internal citations omitted).

overwhelming evidence of his guilt. Linda, Pittman's stepmother, survived the attack and testified at trial that Pittman shot her and shot and killed her mother. The evidence at trial established that Pittman shot at the van Linda and her mother occupied at a distance of ten feet or less. After Pittman drove away in Linda's red Explorer, Linda drove to a nearby tavern where she flagged down Mosier and Stanley for help. She told both men that her step-son shot her and he drove away in her Explorer.

As they were trying to help Linda, Stanley and Mosier saw a red Explorer approaching, but it then executed a U-turn and headed toward the Ohio River. Mosier followed the Explorer in his truck and saw the Explorer stop under a bridge where two men transferred items from the Explorer to a Plymouth Horizon that had been parked under the bridge. Then men then fled over the bridge into Kentucky. The Plymouth Horizon belonged to Naylor, Pittman's accomplice.

After the police searched the Explorer abandoned at the bridge, they recovered seventeen long guns, at least four of which were Hobert's, Pittman's father who had also been murdered. Tests determined that the bullet fragments and shotgun shells recovered at the crime scene had been fired from two of the weapons recovered from the Explorer.

Pittman called his mother two days after the shootings and denied any involvement in the shootings. As a result of that phone call, his mother called the police. After detectives determined that the call was placed from a payphone in Daytona Beach, Florida law enforcement officials located and arrested Pittman and Naylor and seized a Plymouth Horizon. Firearms and survival gear were discovered in the Horizon. After

10

Pittman and Naylor were returned to Indiana, Naylor admitted to his involvement in the shootings.

The evidence of Pittman's guilt is substantial and overwhelming, and therefore, we cannot conclude that the brief testimony concerning his right to remain silent resulted in a prejudicial and fundamentally unfair trial. Accordingly, even if appellate counsel had argued the alleged Doyle violation on direct appeal, Pittman would not have prevailed. For these reasons, we conclude that Pittman has not met his burden of proving that he was denied the effective assistance of appellate counsel.

## II. Newly Discovered Evidence

Pittman claims he is entitled to post-conviction relief under Indiana Post-Conviction Rule 1(1)(a)(4), which provides:

> (a) Any person who has been convicted of, or sentenced for, a crime by a court of this state, and who claims: . . . (4) that there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice; . . . may institute at any time a proceeding under this Rule to secure relief.

Newly-discovered evidence mandates a new trial only when the defendant demonstrates each of the following nine requirements:

> (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial.

Taylor v. State, 840 N.E.2d 324, 329–30 (Ind. 2006) (quoting Carter v. State, 738 N.E.2d 665, 671 (Ind. 2000)). The reviewing court "analyzes these nine factors with care, as the

basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized." Id. at 330 (internal quotations omitted). The burden of showing all nine requirements rests with the post-conviction petitioner. Id.

The evidence of the real estate transaction between Linda and Mosier, which the two briefly discussed during trial, but did not enter into until after trial, certainly meets several of the nine requirements listed above. However, if Mosier's brief inquiry about the possibility of purchasing the real estate from Linda had been disclosed to Pittman, such evidence could only been used for impeachment purposes, which does not warrant a new trial.

Indeed, Pittman concedes that evidence of the real estate transaction would be used for impeachment purposes. See Appellant's Br. at 13-14. However, Mosier's inquiry about the possible sale of Linda's property is not relevant to Pittman's guilt or innocence of the charged crimes. As the post-conviction court noted, Mosier's testimony was consistent with Stanley's testimony, who also assisted Linda shortly after she was shot. Both Stanley and Mosier testified to Linda's physical and mental state after the shooting, and to her statements that her step-son shot her and her mother. Moreover, Mosier's testimony was consistent with facts revealed during investigation of the crimes including recovery of Linda's Explorer under the Ohio River bridge, and that Pittman and Naylor drove Naylor's Plymouth Horizon to Florida, where it was recovered by law enforcement officials.

For these reasons, and given the substantial evidence of Pittman's guilt, which is discussed above, we conclude that admission of evidence concerning the real estate

12

transaction would not have produced a different result at trial. Therefore, the post-conviction court properly concluded that Pittman's newly discovered evidence did not warrant a new trial.

## Conclusion

The post-conviction court properly denied Pittman's petition for post-conviction relief after concluding that Pittman was not denied the effective assistance of appellate counsel and that Pittman's newly discovered evidence did not warrant a new trial.

Affirmed.

KIRSCH, J., and CRONE, J., concur.