
FILED
Jun 25 2013, 6:05 am

CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**VICTORIA CHRIST**
Deputy Public defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TIMMY T. ZIEMAN, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1301-PC-1 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas P. Stefaniak, Jr., Judge
The Honorable Natalie Bokota, Magistrate
Cause No. 45G04-1112-PC-15

**June 25, 2013**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Timmy T. Zieman fled from police and crashed his car into an officer's vehicle, causing that officer serious bodily injury. The State charged Zieman with several crimes including attempted murder and class C felony resisting law enforcement resulting in serious bodily injury. A jury found Zieman guilty but mentally ill of these offenses. The trial court sentenced Zieman to an aggregate sentence of thirty-five years.

Zieman filed a petition for post-conviction relief ("PCR"), arguing that his trial and appellate counsel were ineffective in failing to argue that the same evidence supporting the attempted murder conviction also supported the serious bodily injury element that elevated the resisting law enforcement conviction to a class C felony and therefore his convictions violated double jeopardy principles. The post-conviction ("PC") court found that there was no double jeopardy violation and denied Zieman's petition.

Zieman now appeals the denial of his PCR petition. He argues that trial counsel was ineffective in failing to challenge the elevation of his resisting law enforcement conviction to a class C felony based on serious bodily injury because there is a reasonable possibility that the jury used the same evidence to support the substantial step element of his attempted murder conviction. Based on the prosecutor's arguments at trial and the lack of specificity in the charging information and jury instructions, we conclude that such a reasonable possibility existed, and therefore double jeopardy principles were violated. Accordingly, the PC court clearly erred in finding that trial counsel did not provide ineffective assistance, and we reverse the denial of Zieman's PCR petition. We remand with instructions for the PC court

to reduce Zieman's class C felony conviction to a class D felony conviction and sentence him to one and a half years on that count, for an aggregate sentence of thirty-three and a half years.

## Facts and Procedural History

We summarized the facts underlying Zieman's convictions in a memorandum decision on direct appeal as follows:

> Zieman and his wife, Nicole Zieman ("Nicole"), had been experiencing marital difficulties, and Nicole decided to seek a divorce. On December 4, 2008, one of Nicole's relatives contacted the Schererville Police Department and requested that police escort Nicole from her home. Nicole declined the offer because she wished to pack her belongings before leaving, and asked the police to return the next day.

> That day, December 5, 2008, Nicole informed Zieman that she was leaving. The two argued, and Nicole called her mother, who called the Schererville Police Department. Zieman also called the police, informed them that nothing was wrong, and eventually left the home, got into his white Chevrolet S-10 pickup truck, and drove away.

> In response to the phone calls and their prior visit to the Zieman home, several police officers drove to the home to ensure Nicole's welfare. Other officers were alerted that Zieman had driven away from the home. One of these officers, Adam Biella ("Officer Biella") saw Zieman's truck and followed him for a brief period until dispatch informed him that Zieman's driver's license had been suspended. Another officer, Timothy Mele ("Officer Mele"), had dealt with Zieman before and informed Officer Biella that Zieman was likely "in the process of fighting or fleeing."

> Officer Biella initiated a traffic stop. Zieman pulled over, but then sped away as Officer Biella was walking from his patrol car to Zieman's truck. Officer Biella got back into his patrol car and gave chase, radioing to dispatch that Zieman appeared to be driving back toward his home.

> Officer Biella was later joined in his pursuit by Officer Mele and Corporal Marcus Handley ("Corporal Handley"). The three pursued Zieman through Schererville with lights and sirens activated. At various points in the

3

pursuit, Zieman was driving very rapidly, without using turn signals or stopping at stop lights. During portions of the pursuit, Zieman appeared to be reaching underneath the seat of his car, and at other times appeared to be holding an object against his neck. It was later determined that Zieman had been stabbing his legs and chest and had cut his own neck in an attempt to kill himself.

The officers continued to follow Zieman, but once Zieman's driving posed a danger not only to the public but also to himself, Corporal Handley terminated the pursuit. The officers turned off their lights and sirens, ceased their pursuit, and headed to other calls. Other Schererville officers continued to follow Zieman outside of Schererville's jurisdiction and into Crown Point, though they did not actively pursue him. Once active pursuit ceased, Zieman reduced his speed, though his driving remained somewhat erratic, including rolling stops rather than complete stops at stop signs.

Zieman eventually crossed from Schererville to Merrillville and then into Crown Point. Deputy Joseph Kraus ("Deputy Kraus"), of the Lake County Sheriff's Office, had heard about the Schererville pursuit, saw Zieman's truck, and initiated a second pursuit. He was eventually joined by Officer Airren Nylen of the Crown Point Police Department and Trooper Roa of the Indiana State Police. The three officers pursued Zieman through portions of Crown Point, with Zieman reaching speeds of more than seventy-five miles per hour and swerving through heavy daytime traffic, all the while continuing to accelerate his truck.

Also apprised of the pursuits over police radio was Crown Point Sergeant John Allendorf, Jr. ("Sergeant Allendorf"). Though close to the end of his work day, Sergeant Allendorf was close to the area of the pursuit in Crown Point—near the intersection of 93rd Avenue and Broadway Avenue—and set out to assist Deputy Kraus, Officer Nylen, and Trooper Roa. Entering the intersection of 93rd Avenue and Broadway Avenue, Sergeant Allendorf observed Zieman's truck with police cars in pursuit, with Zieman headed east in the southernmost of two west-bound lanes on 93rd Avenue and the police cars following in the east-bound lanes. Sergeant Allendorf maneuvered his car into the northernmost of the west-bound lanes, leaving sufficient space on the road for Zieman to drive past the patrol car without a collision. Zieman, however, drove his truck into the northernmost lane and steered the vehicle directly at Sergeant Allendorf's car.

4

Sergeant Allendorf attempted to avoid a collision with Zieman by gunning his engine and jumping the curb with two tires, but had no chance of escape. Travelling at least sixty-eight miles per hour, Zieman slammed his truck into the front driver's side of Sergeant Allendorf's slow-moving patrol car, at or just in front of the driver's door. The force of the collision rammed Sergeant Allendorf's car completely over the curb, pinning Sergeant Allendorf inside the patrol car and severely injuring him. Zieman's truck was sent airborne down 93rd Avenue toward Broadway Avenue, eventually landing upside down with flames briefly alight on the vehicle's undercarriage.

Both Zieman and Sergeant Allendorf were extracted from their cars and were rushed to separate emergency rooms. Sergeant Allendorf suffered from an open fracture of his femur; bruised kidney, liver, and lung; and numerous broken ribs, and was required to undergo two surgeries and extensive physical therapy from shortly after the crash until January 2010.

*Zieman v. State*, No. 45A03-1005-CR-230, slip op. at 2-3 (Ind. Ct. App. June 3, 2011) (footnote and citation omitted).

The State charged Zieman with attempted murder, class B felony aggravated battery, two counts of class C felony battery, class C felony resisting law enforcement resulting in serious bodily injury, class D felony criminal recklessness, class A misdemeanor criminal recklessness, and class B misdemeanor reckless driving. A jury found Zieman guilty but mentally ill on all charges except the last, on which it found Zieman guilty. The trial court entered judgment of conviction only for attempted murder, class C felony resisting law enforcement resulting in serious bodily injury, and class A misdemeanor criminal recklessness. The trial court sentenced Zieman to thirty years for attempted murder, four years for resisting law enforcement, and one year for criminal recklessness, to be served consecutively for an aggregate sentence of thirty-five years.

Zieman appealed his attempted murder conviction, arguing that the evidence was insufficient to establish his intent to kill. Concluding that the evidence was sufficient, we affirmed. *Id*., slip op. at 4-5.

In an amended PCR petition, Zieman, by counsel, claimed that his trial and appellate counsel provided ineffective assistance because neither challenged his attempted murder conviction and the serious bodily injury element that elevated his resisting law enforcement conviction on double jeopardy grounds. Following an evidentiary hearing, the PC court issued its findings of fact and conclusions of law denying Zieman relief, which provides in relevant part,

> In Zieman's case, the charging information for attempted murder does not allege what conduct of Zieman constituted the substantial step toward commission of the crime of murder. Therefore, the statutory elements of the charging informations do not allege the same act to establish both the attempted murder … and resisting law enforcement causing serious bodily injury …. Zieman argues however, that the actual evidence used to establish the offenses was the same. He points out that the State presented evidence and argued to the jury that Zieman's act of driving his car into Sergeant Allendorf's vehicle was the substantial step to establish his guilt for attempted murder … and the act effecting serious bodily injury …. Zieman provides no citation to the record where the State made this argument, nor can we find it. The State presented evidence that Zieman turned his vehicle toward Sergeant Allendorf's and sped toward the squad car at speeds exceeding sixty-five miles per hour and accelerating up to eighty-six miles per hour. This act alone satisfies the substantial step element of attempted murder since the attempt to kill someone does not require a touching or an injury.

Appellant's Br. at 28-29 (citations omitted). Zieman appeals. Additional facts will be provided as necessary.

6

**Discussion and Decision**

This is an appeal from the denial of a PCR petition.

> We observe that post-conviction proceedings do not grant a petitioner a "super-appeal" but are limited to those issues available under the Indiana Post-Conviction Rules. [Ind. Post-Conviction Rule 1(1)]. Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). A petitioner who appeals the denial of PCR faces a rigorous standard of review, as the reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court. The appellate court must accept the post-conviction court's findings of fact and may reverse only if the findings are clearly erroneous. If a PCR petitioner was denied relief, he or she must show that the evidence as a whole leads unerringly and unmistakably to an opposite conclusion than that reached by the post-conviction court.

*Shepherd v. State*, 924 N.E.2d 1274, 1280 (Ind. Ct. App. 2010) (citations omitted), *trans. denied*.

Zieman contends that the post-conviction court erred in finding that his trial counsel did not provide ineffective assistance. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)), *cert. denied* (2001). Counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). Prejudice results where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the

7

outcome." *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). "Failure to satisfy either prong will cause the claim to fail." *French*, 778 N.E.2d at 824. Thus, if the petitioner cannot establish prejudice, we need not evaluate counsel's performance. *Bryant v. State*, 959 N.E.2d 315, 319 (Ind. Ct. App. 2011).

Zieman asserts that trial counsel was ineffective because he failed to argue that the attempted murder conviction and the serious bodily injury enhancement of the resisting law enforcement conviction violate the constitutional prohibition against double jeopardy. Article 1, Section 14 of the Indiana Constitution provides, "No person shall be put in jeopardy twice for the same offense." Our supreme court explained,

> [T]wo or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. Both of these considerations, the statutory elements test and the actual evidence test, are components of the double jeopardy "same offense" analysis under the Indiana Constitution.

*Richardson v. State*, 717 N.E.2d 32, 49-50 (Ind. 1999) (footnote omitted).

Here, a comparison of the statutory elements of attempted murder and resisting law enforcement resulting in serious bodily injury does not yield a double jeopardy violation. A person commits murder when he "knowingly or intentionally kills another human being. Ind. Code § 35-42-1-1. "A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime." Ind. Code § 35-41-5-1(a). A person commits class A misdemeanor resisting law enforcement when he "knowingly or intentionally … flees from a

8

law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop." Ind. Code § 35-44.1-3-1(a). The offense is a class D felony if the person "uses a vehicle to commit the offense." Ind. Code § 35-44.1-3-1(b)(1). The offense is elevated to a class C felony if, while committing the offense, "the person operates a vehicle in a manner that causes serious bodily injury to another person." Ind. Code § 35-44.1-3-1(b)(2). In comparing the statutes governing attempted murder and the statute governing resisting law enforcement, we find that each offense consists of elements that are not included in the other. Attempted murder requires proof of the accused's specific intent to kill, which is not required to prove resisting law enforcement. Resisting law enforcement requires proof that the accused fled from a police officer after the officer identified him or herself and told the accused to stop, but such proof is not required to prove attempted murder. Accordingly, the *Richardson* statutory elements test is not violated.

Zieman argues that his convictions violate the *Richardson* actual evidence test. Under the actual evidence test,

> the actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

*Richardson*, 717 N.E.2d at 53. "Application of this test requires the court to 'identify the essential elements of each of the challenged crimes and to evaluate the evidence from the

9

jury's perspective....'" *Lee v. State*, 892 N.E.2d 1231, 1234 (Ind. 2008) (quoting *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002)); *see also Estrada v. State*, 969 N.E.2d 1032, 1044 (Ind. Ct. App. 2012), *trans. denied.* "In determining the facts used by the fact-finder to establish the elements of each offense, it is appropriate to consider the charging information, jury instructions, and arguments of counsel." *Id.*; *see also Jones v. State*, 976 N.E.2d 1271, 1276 (Ind. Ct. App. 2012), *trans. denied* (2013).

Specifically, Zieman contends that there is a reasonable possibility that the jury used the same facts to establish both the substantial step element of his attempted murder conviction and the serious bodily injury element of his class C felony resisting law enforcement conviction. However, "under the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is *not violated* when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, *but not all*, of the essential elements of a second offense." *Spivey*, 761 N.E.2d at 833 (emphases added); *but cf. Alexander v. State*, 772 N.E.2d 476, 478 (Ind. Ct. App. 2002), *trans. denied* (reasoning that under *Richardson/Spivey* actual evidence test, dual convictions are barred if evidentiary facts establishing one or more elements of *either* challenged offense also establish all elements of the other challenged offense), *opinion on reh'g*; *Calvert v. State*, 930 N.E.2d 633, 642 (Ind. Ct. App. 2010) (discussing *Alexander* in light of common law categories of double jeopardy). Zieman does not argue that the facts establishing *all* the elements of attempted murder establish *all* the elements of resisting law enforcement resulting in serious bodily injury. In fact, the evidence showed that when Zieman drove into Crown Point, Deputy Kraus initiated

10

a second pursuit and he was joined by Officer Nylen and Trooper Roa. Zieman was already in the process of fleeing Trooper Roa before Sergeant Allendorf entered the intersection of 93rd and Broadway Avenue. This fact supports fleeing from Trooper Roa that is unconnected with what occurred later involving the attempted murder of Sergeant Allendorf. Accordingly, we conclude that there is no violation of the *Richardson* actual evidence test.

However, "[i]n addition to the instances covered by *Richardson,* 'we have long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson*.'" *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002) (quoting *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002)); *see also Sanjari v. State*, 961 N.E.2d 1005, 1007 (Ind. 2012) ("Often discussed under the general rubric of Indiana double jeopardy jurisprudence, we recognize 'a series of rules of statutory construction and common law that are separate and in addition to the protections afforded by the Indiana Double Jeopardy Clause.'") (quoting *Spivey*, 761 N.E.2d at 834). These rules are sometimes referred to as Justice Sullivan's categories because he first enumerated them in his concurring opinion in *Richardson*. One of these categories prohibits "'conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished.'" *Guyton*, 771 N.E.2d at 1143 (quoting *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring)); *see also Strong v. State*, 870 N.E.2d 442, 443 (Ind. 2007) ("'Under the rules of statutory construction and common law that constitute one aspect of Indiana's double jeopardy jurisprudence, where one conviction 'is

elevated to a class A felony based on the same bodily injury that forms the basis of [another] conviction, the two cannot stand.'") (quoting *Pierce*, 761 N.E.2d at 830); *Owens v. State*, 897 N.E.2d 537, 539 (Ind. Ct. App. 2008) (finding rule violation where "the serious bodily injury that enhanced Owens' robbery charge from a Class C felony to a Class A felony–Hopkins' death–was the very same harm for which Owens was convicted and punished for murder."). Zieman's double jeopardy issue appears to fall within this category. In discussing this category, Justice Sullivan explained, "In situations where a defendant has been convicted of one crime for engaging in the specified additional behavior or causing the specified additional harm, that behavior or harm cannot also be used as an enhancement of a separate crime; either the enhancement or the separate crime is vacated." *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring).

Applying this common law principle to Zieman's case means that if we determine that he was convicted and punished for the enhancement of resisting law enforcement based on the same behavior or harm that forms the basis of his attempted murder conviction, then double jeopardy principles are violated. Indiana courts have not explicitly set forth the standard to be applied in making this determination. However, in related cases, this court has considered whether there was a reasonable possibility that the fact-finder used the same harm

to elevate two convictions.[1] *Boss v. State*, 964 N.E.2d 931, 938 (Ind. Ct. App. 2012) ("From the evidence presented, we find that Boss has demonstrated a reasonable possibility that the evidentiary facts used by the trier-of-fact to elevate her convictions for harboring non-immunized dogs also were used to enhance her convictions for failure to restrain a dog."); *Smith v. State*, 872 N.E.2d 169, 177 (Ind. Ct. App. 2007) ("Smith has demonstrated a reasonable possibility that the same bodily injury was used to enhance both his burglary and robbery convictions."), *trans. denied*; *Sallee v. State*, 777 N.E.2d 1204, 1213 (Ind. Ct. App. 2002) ("Sallee has failed to demonstrate a reasonable possibility that the evidentiary facts used by the jury to establish the element enhancing rape to a Class A felony were also used to establish the element enhancing criminal deviate conduct to a Class A felony."), *trans. denied* (2003); *but cf. Vandergriff v. State*, 812 N.E.2d 1084, 1089 (Ind. Ct. App. 2004) (stating that determination as to whether two convictions are based on same act should "be made as a matter of law 'without any effort to analyze what the jury might have considered.'") (quoting *Guyton*, 771 N.E.2d at 1154 (Boehm, J., concurring)), *trans. denied*. Applying that standard to this case, we phrase the issue as whether there is a reasonable possibility that the jury used the same facts to establish both the substantial step element of Zieman's attempted murder conviction and the serious bodily injury element of his class C felony resisting law enforcement conviction. To determine which facts the trier-of-fact used to establish each element of an offense we consider "the evidence, charging information, final jury instructions

---

[1] Justice Sullivan observed that these cases were similar: "A closely related set of cases provide that to the extent that a defendant's conviction for one crime is enhanced for engaging in particular additional behavior or causing particular additional harm, that behavior or harm cannot also be used as an enhancement of a separate crime." *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring).

and arguments of counsel." *Boss*, 964 N.E.2d at 937 (citing *Ramon v. State*, 888 N.E.2d 244, 253 (Ind. Ct. App. 2008)). Zieman argues that the evidence presented by the State and the prosecutor's arguments "rely on Zieman's act of crossing over the median to get away from Roa and crashing into Allendorf's car to support both the substantial step toward murder" for the attempted murder charge and the serious bodily injury elevation to the resisting law enforcement charge. Appellant's Br. at 15. The State asserts that "the fact that [Zieman] turned his vehicle toward Sergeant Allendorf and sped toward him, accelerating to eighty-six miles per hour supports the attempted murder conviction," while "[Zieman's] acts of fleeing from Trooper Roa and then causing Sergeant Allendorf serious bodily injury supports the class C felony resisting law enforcement conviction." Appellee's Br. at 10. The State adds, "The prosecutor also argued that [Zieman] formed the intent to kill as he crossed over the median into oncoming traffic." *Id*. (citing Appellant's App. at 245).

We begin our analysis with a comparison of the charging informations. The charging information for attempted murder reads, "TIMMY TODD ZIEMAN while acting with the intent to kill did intentionally attempt to kill OFFICER JOHN H. ALLENDORF JR." Appellant's App. at 77. The information does not allege the specific conduct that constituted the substantial step toward commission of the offense. The charging information for resisting law enforcement reads,

> TIMMY TODD ZIEMAN did knowingly or intentionally flee from JOSUE ROA, a law enforcement officer, while JOSUE ROA was lawfully engaged in the execution of his duties as a law enforcement officer, and after JOSUE ROA had identified himself by visible or audible means, and ordered TIMMY TODD ZIEMAN to stop, and while committing this offense, TIMMY TODD ZIEMAN did operate a motor vehicle in a manner that caused serious bodily

14

injury to officer JOHN H. ALLENDORF JR.

*Id*. at 78.

The evidence establishing that Zieman turned his vehicle toward Sergeant Allendorf and sped toward him *could* support the substantial step in killing Sergeant Allendorf *if* that had been charged and/or argued to the jury. As noted above, however, that conduct was not set forth in the charging information for attempted murder. In addition, the jury instruction on attempted murder was as nonspecific regarding the substantial step element as the charging information. It required the jury to find that Zieman, acting with the specific intent to kill Sergeant Allendorf, "did intentionally attempt to kill" Sergeant Allendorf on or about December 5, 2008. *Id*. at 182.

As for arguments of counsel, our review of the record reveals that Zieman crashing his vehicle into Sergeant Allendorf's vehicle was consistently linked with the attempted murder charge. In her opening statement, the prosecutor told the jury, "'Protect and serve.' Exactly what John Allendorf, Jr., a Sergeant with the Crown Point Police Department was doing on December 5, 2008, when the defendant, Timmy Todd Zieman, *tried to murder him by running his pickup truck directly into his squad*." Trial Tr. at 78 (emphasis added). During her closing argument, the prosecutor made multiple statements about Zieman's act of crashing his vehicle into Sergeant Allendorf's vehicle when discussing the attempted murder charge. The prosecutor stated, "And the defendant *strikes* Sergeant John Allendorf because he wanted to kill himself and he wanted to kill that officer," and "[s]o when he found an opportunity to die, he took it. And *he ran into Sergeant Allendorf's squad car* with the

15

explicit intent to die and *with the explicit intent to take that police officer with him.*"

Appellant's App. at 192, 250 (emphases added). The prosecutor also stated,

> His other knowing or intentional acts. …
>
> He *turns his vehicle into* Sergeant Allendorf's squad car. … He wanted to kill himself and take Sergeant Allendorf with him.
>
> Taking a look at the reconstruction, that corroborates what the State has been saying. Looking at *the point of impact*, there are no skid marks and there no yaw marks going into the point of impact, which means the defendant wasn't slowing down. He wasn't out of control. He wasn't doing anything to avoid Sergeant Allendorf. He wanted to kill himself and Sergeant Allendorf. That's what he wanted to do that day.

*Id*. at 197-99 (emphases added).

Further the prosecutor's remarks regarding the resisting law enforcement charge and the attempted murder charge both mention Zieman crossing over the median and crashing into Sergeant Allendorf:

> Resisting Law Enforcement. That on December 5th, in a nutshell, the defendant fled from Trooper Roa. And that while fleeing from Trooper Roa, he caused serious bodily injury to Sergeant Allendorf.
>
> The defendant again was driving his vehicle. Trooper Roa testified that he was in his fully marked squad car on duty at the time. He activated his lights and sirens. And how did he know his lights and sirens were working? Because people were responding to it. People were moving over and getting out of his way.
>
> The defendant doesn't stop. *The defendant crosses over into oncoming traffic. And the defendant crashes into Sergeant Allendorf causing him serious injury.* All the facts lead to Resisting Law Enforcement, guilty.

*Id*. at 195-96 (emphasis added).

> For the Attempted Murder. That Timmy Todd Zieman while aching [sic] with the intent to kill did intentionally attempt to kill Sergeant Allendorf.

16

Again the defendant wanted to die. He stabbed himself. And when that wasn't working quick enough, he realized he is in a vehicle. He can end this all. And he wants to take an officer with him. He sees Sergeant Allendorf on Broadway making that turn. He decides to switch over. And whether it was going to be in the lane closest to the median or in the lane closest to the sidewalk, he was going to hit that car.

He fled from the officers. Crossed into oncoming traffic. *He turned into Sergeant Allendorf.* The reconstruction bears out that version. The civilian corroborate that version. All facts lead to Attempted Murder, guilty.

The defendant, Timmy Todd Zieman, on December 5th of 2008, knew enough to call the police to not get himself into trouble. He knew enough to run from the police because he had a suspended license. And while he may have been suffering from depression, he may have wanted to kill himself, he could have done that earlier and not hurt anybody else but himself. But he chose to continue to flee from the police officers. And when he wasn't dying quick enough by those stab wounds, he switched over onto 93rd when he saw Sergeant Allendorf's vehicle there. *And he used Sergeant Allendorf's vehicle as a mechanism to kill himself and to kill that officer.*

*Id*. at 202-03 (emphases added). Finally, the prosecutor told the jury,

And the State has given you information that he acted with the high probability that as he is bearing down 93rd Avenue, switching over from the eastbound into the westbound lane, it was his conscious objective to do so. *And the high probability that someone is going to get killed or hurt is definitely there when he slammed into the car of* [sic] *excess of 80 miles an hour.*

*Id*. at 259 (emphasis added).

Based on the prosecutor's arguments to the jury and the lack of specificity in the charging information and jury instructions, we conclude that there is a reasonable possibility that the jury used the evidence of Zieman crashing his vehicle into Sergeant Allendorf's vehicle and injuring him to establish both the substantial step element of attempted murder and the resulting serious bodily injury element of class C felony resisting law enforcement, resulting in a violation of double jeopardy principles. Therefore, the PC court clearly erred in

17

finding that Zieman's trial counsel was not ineffective in failing to challenge the serious bodily injury enhancement of the resisting law enforcement charge on double jeopardy principles. Accordingly, we reverse the PC court's denial of Zieman's PCR petition.[2]

As to the proper relief in this case, we observe,

> When two convictions are found to contravene double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation. In the alternative, a reviewing court may vacate one of the convictions to eliminate a double jeopardy violation. In making that determination, we must be mindful of the penal consequences that the trial court found appropriate.

*McCann v. State*, 854 N.E.2d 905, 915 (Ind. Ct. App. 2006) (quoting *Sanders v. State*, 734 N.E.2d 646, 652 (Ind. Ct. App. 2000), *trans. denied*). The double jeopardy violation that exists here is remedied by removing the serious bodily injury enhancement of Zieman's resisting law enforcement conviction and reducing that conviction to a class D felony. In sentencing Zieman, the trial court found that the aggravating and mitigating factors were equal, imposed the advisory sentence on all three convictions, and ordered that the sentences be served consecutively. Therefore, we remand with instructions to reduce Zieman's conviction for class C felony resisting law enforcement to a class D felony and impose the advisory sentence of one and a half years on that conviction, to be served consecutively to his sentence for attempted murder, for a total executed sentence of thirty-three and a half years. *See Pierce,* 761 N.E.2d at 830 (remanding with instructions to reduce class B felony burglary

---

[2] Zieman also argues that his appellate counsel was ineffective, but given that we conclude that trial counsel was ineffective, we need not address that argument.

conviction to class C felony on double jeopardy grounds and to impose specific sentence thereon).

Reversed and remanded.

ROBB, C.J., and FRIEDLANDER, J., concur.