

FILED

Feb 07 2020, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Jonathan O. Chenoweth
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James Miske, Jr., *Appellant-Petitioner,* | February 7, 2020 |
| | Court of Appeals Case No. 19A-PC-1174 |
| v. | Appeal from the Tippecanoe Circuit Court |
| State of Indiana, *Appellee-Respondent,* | The Honorable Sean M. Persin, Judge |
| | Trial Court Cause No. 79C01-1603-PC-4 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, James Miske was found guilty of rape and two counts of criminal deviate conduct, all Class A felonies; criminal confinement, a Class C felony; strangulation, domestic battery committed in the presence of a child, and intimidation, all Class D felonies; and battery and resisting law enforcement, both Class A misdemeanors. He received a sentence of 145 years. On direct appeal, we affirmed Miske's convictions and sentence. *Miske v. State*, 2015 WL 2329120 (Ind. Ct. App. May 15, 2015), *trans. denied*. Thereafter, Miske filed a petition for post-conviction relief which was denied by the post-conviction court. Miske challenges the denial of his petition, raising two issues for our review which we consolidate and restate as whether he received ineffective assistance from his appellate counsel on direct appeal. Concluding Miske's appellate counsel rendered ineffective assistance in omitting issues from his direct appeal, we reverse and remand with instructions.

# Facts and Procedural History

[2] Miske was engaged to V.P. and they shared a house in Lafayette with their child and V.P.'s three children from prior relationships. On January 3, 2014, Miske and V.P. argued and were involved in a physical altercation. By the end of the argument, V.P. stated that she no longer wished to be engaged to Miske and Miske agreed that he would move out.

[3] The following day, Miske left work early intending to start his search for another place to live. In the afternoon, Miske visited Gregory Linder, a high school friend of V.P.'s. Miske and Linder spent several hours talking and drinking. Miske mentioned to Linder his suspicion that V.P. had been unfaithful with another high school friend. Linder told Miske not to be concerned about V.P.'s fidelity, but Miske insisted that "he felt like putting his hands on" V.P. *Id.* at *1. Miske was angry and repeatedly raised his voice, mentioned his military training, and marched around. Linder became concerned for his own safety and suggested Miske leave. From Linder's home, Miske drove to a bar in Lafayette where he spent several hours before he was eventually asked to leave. Miske then drove back to the home he had been sharing with V.P.

[4] On direct appeal, the court described what occurred when Miske arrived home in the early morning hours of January 5:

> V.P. had put the couple's infant daughter to sleep, and two older children were also asleep. V.P. was awake on the living room couch watching television when Miske arrived.
>
> Miske entered the home and came into the living room, and pulled up a beanbag chair next to V.P.'s couch. V.P. smelled alcohol and cigarettes on Miske, but did not respond to his entrance. Miske got up from the chair and began to walk to the bedroom he had shared with V.P. He asked V.P. to have sex with him, but she refused. Miske said he would find sex elsewhere, and went into the bedroom to use his computer.

After twenty or thirty minutes, Miske came out of the bedroom, grabbed V.P. by her hair, and pulled her off the couch and onto the floor. Miske, a former Marine who stood six-feet, three-inches tall, then began choking the five-feet, three-inches-tall V.P. Miske sat on top of V.P. while pressing his hands around her neck, and demanded to know about "David," the friend V.P. and Linder had in common. V.P. asked Miske to stop and tried to tell him that she could not breathe, but Miske's choking restricted her airflow.

Miske's yelling eventually awoke V.P.'s son, who came out to see what was happening. V.P. asked Miske to stop because the child was watching, but Miske continued to yell and throw V.P. around. Miske twice pulled V.P. off the floor by her hair, threw her around so that her head hit a wall, and at one point brought his arm down across the bridge of her nose. Miske choked V.P. multiple times, holding her on the ground while doing so. V.P. thought she was going to die, and asked Miske to stop several times. V.P. told Miske that she was afraid he would kill her, and said she would do whatever he wanted.

At some point, Miske stopped choking V.P. and dragged her to the bedroom, still pulling on her hair. Miske told V.P. to take off his boots, and then told V.P. to remove his pants and to perform oral sex on him. Miske was still holding V.P.'s hair, and forced her head down toward his penis.

Miske next told V.P. to remove her pants and made her get on all-fours on the bed. Miske briefly engaged in vaginal intercourse with V.P. He then began to engage in anal intercourse with V.P., even as she "begged him not to." V.P. complied with Miske's demands because she was afraid, even as she asked him to stop and told him that it caused her pain. While engaging in these acts, Miske told V.P. that "this if [sic] for Mr. Meyers," referring to the mutual friend of V.P. and Linder.

Miske proceeded to force V.P. to perform oral sex, vaginal sex, and anal sex with him twice more. During this, Miske continued to hold V.P.'s hair, and said "a lot of messed up things." Eventually, Miske ejaculated and stopped engaging in sexual conduct with V.P.

After this, Miske and V.P. each sat on opposite ends of the bed from one another. V.P. was crying, while Miske said he knew she would contact police and that he would not kill her; Miske then said he was going to pray "because he was getting ready to kill [V.P.]" V.P. told Miske that she would not call police; Miske then said she could call and he would not do anything to her, but that he would not "go down without a fight."

V.P. begged Miske to go to sleep. Once V.P. was sure Miske was asleep, she went back into the living room, grabbed her phone, and called police.

*Id*. at *2-3 (footnote and internal record citations omitted).

[5] At around 4:30 a.m., officers of the Lafayette Police Department arrived at the house. They entered the bedroom where Miske was sleeping and, after a struggle, were able to subdue and arrest him. One officer transported V.P. to a local hospital. There, V.P. was examined by a sexual assault nurse-examiner ("SANE"). V.P. had suffered injuries to her neck consistent with strangulation, bruising to her cervix consistent with blunt-force trauma, and injury to her anus. When V.P. brushed her hair, a "numerous amount of hair" fell out of her

head. [Direct Appeal] Transcript ("Appeal Tr."), Volume 1 at 112.[1] The SANE concluded that V.P.'s injuries were consistent with having been a victim of sexual assault.

[6] The State charged Miske with rape, two counts of criminal deviate conduct (one count alleging Miske forced V.P. to engage in oral sex and one count alleging he forced her to engage in anal sex), criminal confinement, intimidation, strangulation, domestic battery committed in the presence of a child, battery, and resisting law enforcement. Rape and the two counts of criminal deviate conduct were charged as Class A felonies rather than Class B felonies on the allegation that they had been committed by using or threatening the use of deadly force. *See* Ind. Code §§ 35-42-4-1(b)(1) (rape) (1998), 35-42-4-2(b)(1) (criminal deviate conduct) (1998); *see also* [Direct Appeal] Appendix ("Appeal App.") at 21-23. The deadly force allegedly used in committing those crimes was not specified in the informations. A jury found Miske guilty of all the charged offenses.

[7] On August 12, 2014, the trial court conducted a sentencing hearing and entered judgment of conviction on all charges. Miske was sentenced to forty-five years for rape; forty-five years for each count of criminal deviate conduct; six years for criminal confinement; two years each for intimidation, strangulation, and domestic battery; and one year each for battery and resisting law enforcement.

---

[1] Our citation to the direct appeal materials is based on the .pdf pagination.

The trial court ordered the sentences to be served consecutively in the Indiana Department of Correction and stated the total sentence was 145 years. Several days later, the trial court entered an order clarifying its sentencing order. The court reiterated that the sentences were to run consecutively, but stated:

> [Miske] is sentenced to forty-five (45) years on each of the A felonies, to run consecutively, for a total of one hundred and thirty-five (135) years. On the remainder of the offenses, [Miske]'s sentence is capped at a total of ten (10) years. The one hundred thirty-five (135) years on the A felonies and the ten (10) years on the remaining offenses shall all be executed at the Indiana Department of Corrections [sic] for a total of one hundred forty-five (145) years.

*Id*. at 20.

[8] On direct appeal, Miske raised five issues: 1) whether there was sufficient evidence to support his convictions of rape and criminal deviate conduct through the use or threat of deadly force, 2) whether his convictions of criminal confinement, domestic battery, and battery are barred by principles of double jeopardy, 3) whether the trial court erred when it sentenced him to consecutive sentences for crimes that were part of a single transaction under the continuing crime doctrine, 4) whether the trial court abused its discretion in finding certain aggravating circumstances; and 5) whether his sentence was inappropriate.

This court affirmed Miske's convictions and sentence. *Miske*, 2015 WL 2329120 at *11.[2]

[9]     In 2016, Miske filed a pro se petition for PCR that was later amended by counsel to include a claim of ineffective assistance of appellate counsel. In his amended petition, Miske raised the following issues:

> The State charged [Miske] with rape, two counts of criminal deviate conduct, intimidation, domestic battery, battery, strangulation, and resisting law enforcement. The rape charge and both [criminal deviate conduct] charges were enhanced, from class B to class A felonies, on the allegation that they had been committed via deadly force. Though that force was not specified in the charging information.
>
> At the ensuing jury trial, the trial court's instructions did not identify the deadly force . . . by which [Miske] had committed the rape and [criminal deviate conduct]. But the prosecutor said during his closing argument that "the battery, intimidation, strangulation all of that was the deadly force used in threatening [V.P.] in forcing her to engage into sexual acts in the bedroom."
>
> * * *
>
> Under Indiana common law, "to the extent that a defendant's conviction for one crime is enhanced for engaging in particular additional behavior or causing particular additional harm, that behavior or harm cannot also be used as an enhancement of a

---

[2] One panel member dissented on the Rule 7(B) issue, believing that Miske's sentence was inappropriate and should be revised to fifty-five years – concurrent forty-five-year terms for the Class A felonies, consecutive to ten years on the remaining charges. *Id.* at *11-12.

separate crime." *Richardson v. State*, 717 N.E.2d 32, 56 (Ind. 1999) (Sullivan, J., concurring). In other words, for each enhancement there must be a distinct behavior.

In this case, there were three enhancements, one each for the rape and [criminal deviate conduct] convictions. And the prosecutor identified three behaviors: intimidation, strangulation, and battery. The intimidation occurred after the rape and [criminal deviate conduct], however, and therefore could not be the basis of an enhancement. . . . That leaves two behaviors (battery and strangulation) for three enhancements, which means that at least one behavior was used twice, in violation of the above-quoted rule.

Moreover, the prosecutor never argued that each enhancement was based on a distinct behavior; he instead conflated the battery and the strangulation (and the intimidation), arguing that each enhancement was based on the aggregate force. There were actually three enhancements and only one behavior. . . . Had appellate counsel raised this claim, two of the enhancements would have been vacated.

Another common-law rule prohibits "[c]onviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished." *Richardson*, 717 N.E.2d at 56 (Sullivan, J., concurring). The strangulation and battery were not only the bases of enhancements but also convictions in and of themselves. . . . Had appellate counsel raised the claim, the strangulation, domestic battery, and battery convictions would have been vacated.

[Post-Conviction Relief] Appendix to Brief of Appellant ("PCR App."),

Volume Two at 31-33 (some internal citations omitted).

[10] At the PCR hearing, Miske's appellate counsel was the sole witness. He testified that he considered raising the issue that the multiple Class A enhancements violated common law double jeopardy; however,

> [t]he reason that I didn't raise it and the problem with the argument that you're raising is . . . you [c]ite something that the prosecutor said in final argument as support for your position but . . . that's not evidence. The evidence is contained in the testimony from predominantly the victim, that is really ugly. . . . I started working on an argument, claiming what you're saying that I should have done and the problem is you end up in a re-hash of all of these ugly facts. . . . I thought to myself, I'm not raising this because virtually every decision regarding double jeopardy on these kinds of case[s], rape, criminal deviate conduct were against me. And so I thought that I could use the continuing crime doctrine, it was a lot cleaner, I didn't have to go into the facts and if they wanted to give Miske a break, there were three or four ways raised in the brief . . . where they could have done it.

[Post-Conviction Relief] Transcript ("PCR Tr."), Volume 2 at 17-18. As for the issue of the battery and strangulation crimes also being barred by common law double jeopardy because they were the basis for the enhancement, Miske's appellate counsel testified that he did not recall whether he considered raising that issue, but "that also got back into ugly facts." *Id.* at 20. His objective "was to try and get this guy off a hundred and forty-five year sentence[,]" and he did not "see how that really would have helped." *Id.* at 21. He further testified that he did not think the appellate court would have reversed on either of the two grounds raised on post-conviction and he "actually [thought] it would have been a worse brief with that in it." *Id*. at 24.

The post-conviction court issued findings of fact and conclusions of law denying Miske's amended petition. The post-conviction court concluded:

> 1. Appellate counsel considered arguing that the same facts were used to enhance the convictions for Rape and [Criminal Deviate Conduct], but made a tactical decision not to do so.
>
> * * *
>
> 3. [Miske] has not demonstrated a reasonable possibility that the jury used the same facts for multiple enhancements.
>
> 4. [Miske] has also failed to convince this Court that there is a reasonable possibility that the evidentiary facts used to establish the essential elements for Strangulation, Battery and Domestic Battery were also used to enhance the crimes of Rape and [Criminal Deviate Conduct] to Class A felonies.
>
> 5. [Miske] has failed to show that any resulting prejudice from the decision not to raise the two issues on appeal is so strong that, but for appellate counsel's inaction, the result of the proceedings would have been different.

Appealed Order at 9-10. Miske now appeals.

# Discussion and Decision

## I. Post-Conviction Relief Standard of Review

Post-conviction proceedings are civil in nature and the petitioner must therefore establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). "Post-conviction proceedings do not afford the petitioner an

opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or direct appeal." *Turner v. State*, 974 N.E.2d 575, 581 (Ind. Ct. App. 2012), *trans. denied*. To prevail on appeal, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Hall v. State*, 849 N.E.2d 466, 469 (Ind. 2006). This court will not reweigh the evidence or reassess the credibility of the witnesses and we consider only the evidence and reasonable inferences supporting the judgment. *Id.* at 468-69. We do not defer to the post-conviction court's legal conclusions but do accept its factual findings unless they are clearly erroneous. *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002), *cert. denied*, 540 U.S. 830 (2003).

## III. Ineffective Assistance of Appellate Counsel

[13] Miske claims his appellate counsel was ineffective for failing to raise two common law double jeopardy claims: 1) that the Class A felony enhancements to his rape and two criminal deviate conduct convictions were all based on the same additional behavior and therefore only one Class A felony conviction could stand while the other two should be reduced to Class B felonies, and 2) that the strangulation, domestic battery, and battery convictions were based on the same behavior that supported the Class A felony enhancement and therefore could not stand as independent convictions.

# A. Standard of Review

[14] The standard for evaluating claims of ineffective assistance of appellate counsel is the same standard as for trial counsel. *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013). Thus, to establish any claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel performed deficiently, and the deficiency resulted in prejudice. *Lee v. State*, 892 N.E.2d 1231, 1233 (Ind. 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

> First, a defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed to the defendant by the Sixth Amendment. Second, a defendant must show that the deficient performance prejudiced the defense. . . . To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Garrett,* 992 N.E.2d at 718-19 (internal citations and quotations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Sims v. State*, 771 N.E.2d 734, 741 (Ind. Ct. App. 2002), *trans. denied*.

[15] Ineffective assistance of appellate counsel claims falls into three categories: 1) denying access to an appeal; 2) failing to raise issues; and 3) failing to present issues competently. *Timberlake v. State*, 753 N.E.2d 591, 604 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002). The second category is applicable to Miske's claims. To satisfy the first prong of the *Strickland* test when the petitioner

claims appellate counsel failed to raise an issue, the petitioner must show that the unraised issue was significant and obvious from the face of the trial record and that the error cannot be explained by any reasonable strategy. *Carter v. State*, 929 N.E.2d 1276, 1278 (Ind. 2010). To establish the prejudice prong, the petitioner must show that the issues appellate counsel failed to raise were clearly more likely to result in reversal or an order for a new trial. *Garrett*, 992 N.E.2d at 724.

## B. Double Jeopardy

[16] The Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense[,]" Ind. Const. art. 1, § 14, preventing the State from proceeding against a person twice for the same criminal offense, *Hopkins v. State*, 759 N.E.2d 633, 639 (Ind. 2001). The constitutional double jeopardy clause prohibits multiple convictions if there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Richardson v. State*, 717 N.E.2d 32, 53 (Ind. 1999). However, Indiana has also long adhered to a "series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson*." *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002) (quotation omitted). It is these rules on which Miske bases his PCR claims.

[17]     These rules fall into five categories, which were first enumerated by Justice Sullivan in his concurrence in *Richardson*.  717 N.E.2d at 55-56; *see Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002) (the court acknowledging and employing Justice Sullivan's analysis as an adjunct to the constitutional test set forth in *Richardson*).  Included among these categories is one that Miske claims is applicable to his two challenges here:  "Conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished."  *Richardson*, 717 N.E.2d at 56 (emphasis omitted).

[18]     In explaining this "enhancement" category, Justice Sullivan divided it further into two prongs.  First, "[i]n situations where a defendant has been convicted of one crime for engaging in the specified additional behavior . . ., that behavior . . . cannot also be used as an enhancement of a separate crime; either the enhancement or the separate crime is vacated."  *Id.*  A "closely related" situation is where "a defendant's conviction for one crime is enhanced for engaging in particular additional behavior[;] that behavior . . . cannot also be used as an enhancement of a separate crime."  *Id.*  He emphasized, however, that this rule provides no relief where the behavior that is the basis for the challenged enhancement is distinct and separate from behavior that is the basis for another conviction or enhancement.  *Id*.  Our analysis of this category operates much like the actual evidence test covered in *Richardson*, and thus, we apply the "reasonable possibility" standard.  *Duncan v. State*, 23 N.E.3d 805, 817 (Ind. Ct. App. 2014), *trans. denied*.  In other words, we ask whether there is

a reasonable possibility the factfinder used the same evidentiary facts to establish both a crime and an enhancement to a separate crime or to establish multiple enhancements. *See Richardson*, 717 N.E.2d at 53. In making this assessment, we consider the evidence, charging information, final jury instructions, and arguments of counsel. *Zieman v. State*, 990 N.E.2d 53, 62 (Ind. Ct. App. 2013).

### 1. State's Arguments

[19] We begin by addressing the State's contention that Miske is challenging only strategy – not "what" appellate counsel challenged, but "how[.]" Brief of Appellee at 15; *see also McKnight v. State*, 1 N.E.3d 193, 204 (Ind. Ct. App. 2013) ("We rarely find ineffective assistance in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal. One reason for this is that the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel.") (quotation omitted). The State points out that appellate counsel *did* make double jeopardy challenges on direct appeal and that Miske offers only a "slightly different" strategic approach now. Br. of Appellee at 15. Appellate counsel did raise claims that certain of Miske's convictions violated constitutional double jeopardy. *See Miske*, 2015 WL 2329120 at *5-6.[3] However, the common law double jeopardy rules he now

---

[3] Specifically, counsel challenged whether Miske's conviction of criminal confinement was prohibited because the same evidence used to convict him of criminal confinement was used to convict him of rape. Counsel also challenged whether Miske's convictions of battery and domestic battery were prohibited as lesser-included offenses of rape. The court held there was no constitutional double jeopardy violation in either case.

relies on "are not governed by the constitutional test set forth in *Richardson*."
*Guyton*, 771 N.E.2d at 1143. Appellate counsel also raised a claim that multiple convictions were barred by the continuing crime doctrine, a category of double jeopardy that prohibits convicting a defendant "multiple times for the same continuous offense."[4] *Walker v. State*, 932 N.E.2d 733, 736-37 (Ind. Ct. App. 2010); *see Miske*, 2015 WL 2329120 at *6-8. Neither of these claims touches upon the significant multiple enhancements with which Miske was charged and convicted, which is the very point of Miske's post-conviction challenge. Therefore, he is now making an entirely different claim and not merely taking a "slightly different" approach.

[20] The State also contends that "it is not even clear that the common law rule advanced by [Miske] . . . was indeed in place at the time of his appeal," Br. of Appellee at 18, and therefore "the strategy of using the common law rule was *not* clearly stronger or more obvious" than the double jeopardy claims advanced on direct appeal because "case law allowed for the same conduct to be applied across multiple convictions[,]" *id.* at 20. In questioning the existence of the rule, the State relies on a statement by our supreme court in *Sistrunk v. State*, 36 N.E.3d 1051, 1054 (Ind. 2015), that "our recognition in *Richardson* of the

---

[4] "The continuing crime doctrine essentially provides that actions that are sufficient in themselves to constitute separate criminal offenses may be so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Firestone v. State*, 838 N.E.2d 468, 471 (Ind. Ct. App. 2005). Counsel argued that all of Miske's convictions except resisting law enforcement were for actions that were part of a continuing crime that should have only one sentence. The court held there were no double jeopardy concerns after applying the actual evidence test under the continuing crime doctrine.

common law rule establishing that enhancements cannot be imposed for the very same behavior could not have included use of a single deadly weapon during the commission of separate offenses. And this is so *because no such common law rule existed*. Instead the opposite was true." (Emphasis added.)

[21] The defendant in *Sistrunk* was convicted of robbery and criminal confinement, both elevated from Class C to Class B felonies because the defendant was armed with a deadly weapon while committing the crimes. The defendant appealed, arguing among other things that double jeopardy precluded enhancing both convictions because the same force was used. Our supreme court affirmed the convictions, both acknowledging the common law rule from *Richardson* that precludes conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior as another crime for which the defendant has been convicted and punished *and* stating that "our jurisprudence teaches that *committing two or more separate offenses each while armed with a deadly weapon*—even the same weapon—is not within the category of rules precluding the enhancement of each offense based on 'the very same behavior.'" *Id.* (emphasis added); *see also Miller v. State*, 790 N.E.2d 437, 439 (Ind. 2003) (holding no common law double jeopardy violation for multiple enhancements based on the presence of a single knife because *repeated use* of a weapon to commit multiple crimes is not "the very same behavior"); *Marshall v. State*, 832 N.E.2d 615, 622 (Ind. Ct. App. 2005) (same), *trans. denied*; *see also Sallee v. State*, 777 N.E.2d 1204, 1213 (Ind. Ct. App. 2002) (holding *repeated, separate and distinct threats* to kill victim while committing multiple crimes

supported the enhancement of each crime), *trans. denied*. Thus, the common law double jeopardy rule Miske relies on *does* exist, and case law does *not* allow for the same conduct to be applied across multiple convictions unless there is separate and distinct conduct for each crime, which is exactly what Miske now claims.

## 2. Multiple Enhancements

Miske was charged with one count of Class A felony rape and two counts of Class A felony criminal deviate conduct. The charging informations for each crime stated they were "committed by using or threatening the use of deadly force[.]" Appeal App. at 18-20. No specifics about the alleged deadly force used in the commission of each crime were included in the informations.

At trial, V.P. testified that Miske pulled her off the couch by her hair, put one hand around her neck and choked her, threw her against a wall, and hit her across the bridge of her nose. V.P. pleaded with Miske, "Please stop I'm scared you're going to kill me. . . . I'll do anything you want." Appeal Tr., Vol. 2 at 37. After this sequence of events, Miske picked V.P. up by her hair and took her into the bedroom. Holding her hair the "entire time," Miske repeatedly forced V.P. to perform oral sex on him and submit to vaginal and anal intercourse. *Id.* at 39. V.P. could not remember anything Miske said to her while he was choking her or sexually assaulting her, but after the sexual assault ended, V.P. said Miske sat on the edge of the bed and "said that he was going to pray because he was getting ready to kill [her]." *Id.* at 44. V.P. testified that it hurt when Miske was holding her hair during the encounter and that when

she left the hospital approximately twelve hours later, she was still feeling pain in her head. *See id*. at 42, 52. The SANE testified that V.P. had "a numerous amount of hair falling out of her head" when she combed her hair for the rape kit. Appeal Tr., Vol. 1 at 112.

[24] The State's closing argument made the following salient points:

- "[T]he battery, intimidation, strangulation *all of that* was the deadly force used in threatening her in forcing her to engage into sexual acts in the bedroom." Appeal Tr., Vol. 2 at 155 (emphasis added).

- "If the defendant grabs he[r] hair or gets on top of her and holds her down and she says no, no, no, stop. And he still has sexual intercourse with her, that is rape, that is B felony. When you start strangling her and starts choking her where she can't breathe and she is saying please don't kill me . . . and *then he drags her into the room* and rapes her. That is A felony rape. That is threatening the use of deadly force. And at one point before [she says she will do anything he wants] he was using deadly force on her. She couldn't breathe. She is staring at her 4 year old thinking she is going to die. . . . That is deadly force." *Id*. at 165-66 (emphasis added).

- "Count 2 [criminal deviate conduct], these are the same. Again it's a separate crime . . . but if you go from [one] act to the other, to the other *based on the same threats and the same acts and the same conduct* those elements overlap. He's still compelled her by force. The *same force used by the rape* and he still threatened the use of deadly force and I would

argue actually used deadly force in order to get her into the bedroom.

*Id.* at 168-69 (emphasis added).

The charging informations were read to the jury as part of the final instructions. The jury was also instructed on the statutory definitions of each crime and that "deadly force" is defined by statute as "force that creates a substantial risk of serious bodily injury." *Id*. at 206. "Serious bodily injury," however, was not defined for the jury. The jury found Miske guilty of all counts, and the trial court sentenced him, in part, to three consecutive forty-five-year terms for the Class A felonies.

[25] Based on V.P.'s testimony about the sequence of events and especially the State's statement in its closing argument that "the battery, intimidation, strangulation *all of that* was the deadly force used in threatening her in forcing her to engage into sexual acts in the bedroom[,]" *id.* at 155 (emphasis added), Miske argues that there is at least a reasonable possibility the three Class A felony enhancements are based on the same behavior, that this was a significant and obvious issue that should have been raised on direct appeal, that its omission was not supported by any reasonable strategy, and that he was prejudiced by the failure to raise the issue. Miske concedes at the outset that there is sufficient evidence of the use of deadly force to support *one* Class A felony enhancement. However, he argues there is a reasonable possibility the jury used that same evidence of deadly force to enhance the other two counts. We agree.

As noted above, in assessing whether there is a reasonable possibility the jury used the same evidence for purposes of a double jeopardy challenge, we consider the charging information, evidence, final jury instructions, and arguments of counsel. *See supra* ¶ 18 (citing *Zieman*, 990 N.E.2d at 62).

Here, the charging informations stated the elements of the crimes of Class A felony rape and criminal deviate conduct but did not include details to indicate which facts supported the individual charges. Instead, each charge was generally alleged to have been committed "by using or threatening the use of deadly force[.]" Appeal App. at 21-23. The evidence at trial was that Miske strangled and battered V.P. in the living room. While Miske was strangling her, V.P. thought she was going to die. Miske then dragged V.P. by her hair into the bedroom where he committed the sexual crimes. Miske continued to hold onto V.P.'s hair while forcing her to engage in sexual acts and V.P. testified that his grip hurt. V.P. did not recall any specific thing that Miske said to her during the sexual acts, although after the sexual acts were completed, he said he was going to kill her. The State's final argument focused on Miske's conduct leading up to the sexual assaults as satisfying the deadly force element—that Miske pulled V.P.'s hair, battered her, and strangled her before dragging her into the bedroom—rather than any particular additional conduct constituting deadly force during the sexual assaults. *See* Appeal Tr., Vol. 2 at 155 ("[T]he battery, . . . strangulation all of that was the deadly force used in threatening her . . . to engage into sexual acts in the bedroom."); *id.* at 165-66 (arguing that Miske grabbing V.P.'s hair and choking her to the point she could not breathe

was using deadly force to drag her into the bedroom where he raped her).  In addition, the State argued that the deadly force Miske used to get V.P. into the bedroom was the same force used to commit rape *and* criminal deviate conduct. *See id.* at 168-69 (noting that the force used to commit criminal deviate conduct was "the same threats and the same acts and the same conduct" as the force used to get her into the bedroom and "the same force" used to commit rape).[5] The final instructions included a reading of the charges and the statutory definition of each crime, plus the definition of deadly force as "force that creates a substantial risk of serious bodily injury[,]" *id.* at 206, but "serious bodily injury" was not defined for the jury.

[28]  There is no evidence that Miske had a weapon or repeatedly threatened to kill V.P. while he was committing the sexual assaults.  That makes this case different than, for instance, *Marshall v. State*, 832 N.E.2d 615, 622 (Ind. Ct. App. 2005), *trans. denied*, wherein we held three convictions for Class A felony child molesting committed with the same knife did not constitute double jeopardy because the defendant had the knife during each act, or *Sallee*, 777 N.E.2d at 1213, wherein we held Class A felony enhancements for both rape and criminal deviate conduct did not constitute double jeopardy because when the defendant repeatedly told the victim while forcing her to perform or submit to various sexual acts that she would be killed if she did anything wrong, he made separate

---

[5] Appellate counsel noted at the PCR hearing that the State's closing argument was not evidence on which he could rely in making a common law double jeopardy argument. *See* PCR Tr., Vol. 2 at 17.  However, closing arguments *are* a valid consideration in double jeopardy analysis. *Zieman*, 990 N.E.2d at 62.

and distinct threats supporting multiple enhancements. In fact, although V.P. testified that she feared she would be killed throughout the encounter, she also testified that Miske only articulated a threat to kill her after the sexual assaults were completed. There is no evidence that Miske hit or strangled V.P. *while* he was committing the sexual assaults, only that he continuously held onto her hair. Under different circumstances where "serious bodily injury" was defined for the jury and where the State focused on this conduct being repeated during each act, it is possible the jury could have latched onto the fact that Miske continued to pull V.P.'s hair causing her pain during each act as evidence of deadly force, but the jury was not instructed that serious bodily injury includes injury that creates a substantial risk of death *or* that causes extreme pain. Ind. Code § 35-31.5-2-292. Without that instruction, it is unlikely that a reasonable jury would think pulling hair creates a substantial risk of serious bodily injury so as to constitute deadly force.[6]

[29] Considering the generic charging instruments and final instructions, the evidence adduced at trial, and the State's final argument that focused solely on

---

[6] The post-conviction court in its order quoted the definition of "serious bodily injury" and found there was "ample evidence that [Miske] continually used force that created a substantial risk of extreme pain." Appealed Order at 8. But the jury did not have that context in which to evaluate the evidence presented.

The post-conviction court also noted V.P.'s various injuries and stated that Miske's "suggestion that the physical force used to cause vaginal bruising and anal bleeding is not deadly force is unavailing." *Id.* Both rape and criminal deviate conduct can be a Class A felony if the offense "results in serious bodily injury to a person other than the defendant[.]" Ind. Code § 35-42-4-1(b)(3) (rape) (1998); Ind. Code § 35-42-4-2(b)(3) (criminal deviate conduct) (1998). Again, the jury was not instructed on the definition of "serious bodily injury" for the purposes of proving deadly force, and further, the State did not charge Miske with a Class A felony for causing injury to V.P. and thus separate harm does not support the multiple enhancements.

Miske's behavior as a whole in the living room and failed to pinpoint any specific and distinct conduct in the bedroom that would constitute separate deadly force accompanying each of the sexual assaults, we conclude Miske has shown a reasonable possibility that the jury used the entirety of the acts occurring in the living room as the deadly force used to effectuate all of the sexual assaults that came after. *See Curry v. State*, 740 N.E.2d 162, 165-66 (Ind. Ct. App. 2000) (holding there was a reasonable possibility jury used the same facts to establish the essential elements of force that enhanced multiple crimes where victim sustained multiple injuries from a single beating that occurred before the defendant committed acts of rape and criminal deviate conduct: "the beating that . . . supported the enhancement of the charges . . . consisted of a single episode of brutality[. T]he State presented no evidence at trial that would have indicated to the jury that the 'force' elements of the . . . charges were to be satisfied by distinct acts of violence."), *trans. denied*; *cf. Holloway v. State*, 773 N.E.2d 315, 319 (Ind. Ct. App. 2002) (holding the same bodily injury was improperly used to enhance multiple convictions: "[T]he serious bodily injury inflicted by [the defendant] stemmed from a single criminal episode, albeit delivered in multiple blows, immediately preceding" the acts of criminal deviate conduct and rape; thus, only one conviction could be enhanced by the fact of the serious bodily injury), *trans. denied*. Under these facts and circumstances, we can only conclude that Miske was convicted of three Class A felonies based on one act of deadly force – battering and strangling V.P. in the living room to remove her to the bedroom and then sexually assault her.

The State made no effort to prosecute the case in a manner that ensured the same evidence was not used to support multiple verdicts. Rather than untangle the evidence to try to show separate and distinct behaviors accompanying each alleged act of sexual conduct, the State conflated the evidence and argued the very same behavior was used to enhance three separate crimes from Class B to Class A felonies. Therefore, Miske was subjected to double jeopardy when he was convicted of enhanced versions of all three crimes. Had this claim been raised on direct appeal, it likely would have prevailed. Miske's appellate counsel testified at the PCR hearing that he considered raising this common law double jeopardy claim on direct appeal but "tried to steer clear of [the ugly facts] as much as [he] could." PCR Tr., Vol. 2 at 23. It was thus significant and obvious on the face of the record. Moreover, appellate counsel testified that his strategy on appeal was to try to get Miske's sentence reduced. Had this claim been successfully raised, Miske's sentence would have been significantly reduced. Although appellate counsel claimed he did not raise the issue to avoid the "ugly facts" of this case, the facts were unavoidable in raising virtually *any* issue in this case. Omitting it therefore served neither appellate counsel's stated strategy nor any other reasonable strategy.

As for prejudice, we have already alluded to the fact that had the common law double jeopardy claim regarding multiple enhancements for the "very same behavior" been raised, it was more likely to have prevailed than the constitutional double jeopardy claim appellate counsel did raise. *See Garrett*, 992 N.E.2d at 724 (stating that to establish prejudice, the petitioner must show

that the omitted issues were clearly more likely to result in reversal). Further, success on this claim would have meant that two of the three Class A felony convictions would have been reduced to Class B felony convictions and Miske's sentence reduced accordingly. Miske was sentenced to consecutive forty-five-year terms for each of three Class A felony convictions for a total of 135 years. *See* Ind. Code § 35-50-2-4(a) (providing that a Class A felony is punishable by a fixed sentence between twenty and fifty years, with an advisory sentence of thirty years). But if two of Miske's Class A felony convictions were instead Class B felony convictions, served consecutively to the Class A felony conviction and to each other, his maximum sentence for these three convictions would have been at most ninety years – or at least forty-five years less than the sentence he received. *See* Ind. Code § 35-50-2-5(a) (providing a Class B felony is punishable by a fixed sentence between six and twenty years, with an advisory sentence of ten years).[7]

[32] Miske has shown that he would have been entitled to relief on a common law double jeopardy claim challenging his multiple Class A felony enhancements, and that such relief would have resulted in a substantial reduction in his sentence, thereby showing by a preponderance of the evidence that his appellate counsel was ineffective for failing to raise the issue. Accordingly, he has also shown that the evidence leads to a conclusion opposite that reached by the post-

---

[7] Miske could have been sentenced to up to fifty years for a Class A felony conviction and up to twenty years for each Class B felony conviction for a possible maximum sentence on these three convictions of ninety years if ordered to be served consecutively.

conviction court on this issue and that the post-conviction court clearly erred in denying him relief.

### 3. *Multiple Convictions*

[33] Miske also claims his behavior that serves as the basis for his convictions of strangulation, domestic battery, and battery was also the basis for the Class A felony enhancement and therefore those convictions cannot stand independently. This claim is also based on the "enhancement" category of common law double jeopardy under the prong which states that if a defendant is convicted of a crime for engaging in a certain behavior, that behavior cannot also be used to enhance a separate crime and either the enhancement or the separate crime must be vacated. *See Richardson*, 717 N.E.2d at 56; *see supra* ¶ 18.

[34] Miske again claims that omitting this issue was not a reasonably strategic decision because appellate counsel testified that his strategy was to reduce Miske's sentence and that he tried to offer the appellate court multiple avenues to do so. If a claim that these three convictions violated common law double jeopardy rules were successful, Miske's sentence would have been reduced.[8]

---

[8] Miske claims his sentence would have been reduced by three to five years. However, the trial court sentenced Miske to consecutive terms of six years for criminal confinement, two years for intimidation, two years for strangulation, two years for domestic battery, one year for battery, and one year for resisting law enforcement for a total sentence of fourteen years. The court then stated that his sentence for those crimes was capped at ten years. If Miske's convictions and sentences for strangulation (two years), domestic battery (two years), and battery (one year) were vacated, he would be subject to a nine-year-sentence on the remaining convictions and, with the cap, would be saved one year on his current sentence.

Here, Miske has shown a reasonable possibility that the Class A felony enhancement was imposed for the very same behavior as the batteries and strangulation for which Miske was separately convicted. That is, based on the fact the State presented this case to the jury as if all the crimes that were committed in the living room constituted one act of deadly force leading to the sexual crimes, the Class A felony enhancement and his convictions for battery, domestic battery, and strangulation were all based on the same acts. This also violates our common law prohibitions against double jeopardy, and if a challenge had been made to these convictions on this basis, it likely would have succeeded. Accordingly, Miske has shown by a preponderance of the evidence that his appellate counsel should have raised this issue on direct appeal and the post-conviction court clearly erred in denying him relief.

### 4. Remedy

We acknowledge that all of Miske's crimes, individually and as a whole, were heinous. Had this case been more carefully charged, presented, and argued by the State, any double jeopardy concerns could have been avoided. However, on this record, we are compelled to conclude that there are double jeopardy violations that Miske's appellate counsel should have raised, and, barring that, the post-conviction court should have remedied. When convictions are found to contravene double jeopardy principles, "a reviewing court may remedy the violation by reducing either conviction to a less serious form of the offense if doing so will eliminate the violation. If it will not, one of the convictions must be vacated." *Girten v. State*, 136 N.E.3d 1160, 1162 (Ind. Ct. App. 2019)

(opinion on reh'g) (quoting *Richardson*, 717 N.E.2d at 54). Miske was entitled to post-conviction relief on his claim that multiple Class A felony enhancements violated the common law double jeopardy "enhancement" formulation. Accordingly, we reverse the denial of post-conviction relief on this issue and remand to the trial court to vacate two of the Class A felony convictions, enter judgment of conviction as Class B felonies, and sentence Miske for the two Class B felonies accordingly.[9]

[37] We also conclude that Miske's convictions for battery, domestic battery, and strangulation are impermissible under Indiana's common law double jeopardy rules, as they are based on the very same behavior as the Class A felony enhancement. Because there is no less serious form of these convictions that would eliminate the violation we reverse and remand with instructions that these convictions and corresponding sentences be vacated. *See Richardson*, 717 N.E.2d at 55 (stating the proper remedy for a double jeopardy violation is to vacate the conviction with the less several penal consequences).

# Conclusion

---

[9] We do not express an opinion as to which conviction should remain a Class A felony and in practice, it makes no difference. We do note, however, that based on the sequence of events described by V.P., Count II alleging criminal deviate conduct for an act involving the penis of one party and the mouth of another appears to be the first-in-time and therefore the most immediately caused by the use of the proven deadly force.

[38] Miske has shown by a preponderance of the evidence that he is entitled to relief on his claims that his appellate counsel was ineffective for omitting two issues on direct appeal. Accordingly, the judgment of the post-conviction court is reversed, and this case is remanded with instructions.

[39] Reversed and remanded.

Mathias, J., and Pyle, J., concur.